TORDECK, Respondent, vs. ROMADKA, Appellant.

*March 25 — April 9, 1891.*

*Assault and battery: Instructions.*

An instruction, in an action to recover damages for an assault and battery, intended to call special attention to the professional evidence bearing on the injury, that " as to the extent of the injury the evidence is not very voluminous. The most we know about it is what we have heard from Dr. M., who testifies that when he examined him he found that there had been occasioned by some means a slight disturbance of his brain, and he testifies that a very slight disturbance of the temple where the skull is very thin may produce serious results of that kind, while a very severe blow might produce none. It is very easy, in other words, to administer an unlucky blow upon that region of the head," cannot be deemed to have prejudiced the jury against the defendant so as to call for the reversal of a judgment against him, where it was immediately followed by an instruction that they must determine from all the evidence they had heard on that subject how seriously he was hurt.

APPEAL from the Circuit Court for *Milwaukee* County. The case is fully stated in the opinion.

For the appellant there was a brief by *Miller, Noyes & Miller*, and oral argument by *G. H. Noyes*. They argued, among other things, that the court's instruction as to the evidence was erroneous, as being one upon the weight of

evidence and credibility of witnesses; as expressing the opinion of the judge thereon; and as, in effect, excluding the other evidence as to the extent of the injury from the consideration of the jury. *Poertner v. Poertner*, 66 Wis. 644; *Gillett v. Phelps*, 12 id. 400; *Hutchinson v. Crain*, 3 Ill. App. 20; *Frame v. Badger*, 79 Ill. 444; *Phœnix Ins. Co. v. Sholes*, 20 Wis. 38; *Benjamin v. Covert*, 55 id. 157; *Valley L. Co. v. Smith*, 71 id. 304.

*J. J. McAuliffe*, for the respondent.

TAYLOR, J. This action was brought by the respondent to recover damages for an assault and battery, committed upon him by the appellant, by reason of which he was so greatly injured and disabled as to be unable to attend to his ordinary business. The defendant answered, denying generally the allegations of the complaint. The case was tried by the court and a jury. The plaintiff obtained a verdict for the sum of $1,000, and from the judgment entered in favor of the plaintiff the defendant appeals to this court.

On the argument in this court the learned counsel assign but two errors. It is urged as error that the court gave the jury the following instruction:

"As to the extent of the plaintiff's injury, the evidence is not very voluminous. The most we know about it is what we have heard from Dr. Miller, who testifies that when he examined him he found that there had been occasioned by some means a slight disturbance of his brain; and he testifies that a very slight disturbance to the temple, where the skull is very thin, may produce serious results of that kind, while a very severe blow might possibly produce none. It is very easy, in other words, to administer an unlucky blow upon that region of the head."

The objection made to this instruction is that it was partial in its statement as to the evidence bearing upon the

injuries which the plaintiff had received; and it is also claimed that, if the court undertook to make any statement as to what the evidence was upon that subject, it was the duty of the court to state all the evidence in the case bearing upon that question.

The evidence in the case bearing upon the nature and extent of the plaintiff's injuries was the testimony of the plaintiff himself, the evidence of Dr. Miller on the part of the plaintiff, and the evidence of Dr. Wahl on the part of the defendant. The testimony of the plaintiff was, in substance, that while he was working for the defendant some dispute arose, and the defendant took a board, and struck the plaintiff on the head, and he fell down, and lay there a short time; then he got up and went home. He indicated that he was struck on the temple. That he was disabled for some time, and did not go to work again until the third month. He says his head ached too much, and that it ached when he gave his evidence on the trial. When he stooped down, and then got up, everything turned around. "Before I got hurt my eyes were not just as they are now." He says he tried working in the foundry, and could not stand it; worked fourteen days and was idle then four weeks. He then started to work in the slaughter-house, and could not stand it there. The matter is, when he stoops down his head turns, and everything turns with it. Before he was struck he had worked for the defendant continuously for three years. He was not sick before he was struck. The plaintiff also introduced other evidence tending to show that he was sick and disabled for some time after he was struck by the defendant.

Frank Miller, a witness for the plaintiff, testified as follows: "Live in Milwaukee. Practicing fifteen years. Remember plaintiff. He called on me June 22, 1889. At that time I was in trouble about my diagnosis. I examined him thoroughly,— his skull. I did not find anything on

Tordeck vs. Romadka.

that skull, too, but when I told him, 'Step your feet to-
gether; close your eyes and stay,'—he could not stay.
Kept moving his head. I examined his eyes. The pupil of
one eye was larger than the other. The pupil of one eye
was right straight in the same size,—no contraction and no
dilation. Therefore my conclusion was it is a trouble of
the brain. It was very difficult for me to make a true diag-
nosis. We find such cases sometimes,—a fracture of the
internal table of the head. The internal table of the head
looks like glass, and if that is broken it makes pressure on
the brain, and we find a case of slight paralysis on one side.
It may be an extravasation of the blood. A strike on the
head is always a dangerous thing. The brain is inclosed in
a hard shell. The skull is non-elastic. Now, if some drops
of blood come in, you see an extravasation of blood, and it
hurts the function of the brain. When he came to me I
saw only symptoms of an irritation from the brain and eye.
Could not make out. It wasn't an acute case. I could not
tell whether that trouble of the brain came from that or
not. Can't tell that it came from that. Both pupils [of
his eyes] are normal now. Have not seen any marks on
his face. I sent him to Dr. Senn. From his condition at
that time, can't tell whether that injury to the brain would
be permanent. Can't tell what kind of injury he had in
his head now. A clot of blood may be absorbed. He
visited me three times. On the 23d, told him it was not
an acute case; 'Come to me again in about two or three
days.' He came to me again on the 25th, and I could not
make out what it was, and I sent him to Dr. Senn. If I
had seen him first,—I suppose cerebral *meningitis;* but I
can't find that out yet. It was a matter of standing for
eight days. Supposing he had received a blow on his head
fourteen days before, it would have required a blow of con-
siderable violence in order to produce the condition in
which I found him. There wouldn't have been any external

sign of that blow. I think a stroke with a flat piece of board,— the percussion would have caused that injury to the brain. It wouldn't have required a blow sufficient to have abrased the skin. Supposing this man had bleeding of the nose before this, it would not indicate that there was some rupture of an internal vessel. Supposing he was troubled with that considerable before, it might be that would indicate some disturbance of the brain. It may be that it would indicate that the brain had received a shock before. Don't know that he is now in a normal condition. I saw one pupil of his eye was dilated. That means pressure of the brain. I saw no marks of violence on his person anywhere."

On the defense Dr. Wahl testified as follows: "I am a practicing physician and have been practicing here about five years. The plaintiff called upon me to be treated in the month of June last. He wanted to be reported as sick to the Bohemian Benevolent Society, for which I am physician. I told him I did not think his injury was severe enough to allow me to report his sickness to the society. I told him to go home, and apply cold water to his face where he was injured, and then he left. I examined his injury at the time. I only found his nose swollen, and there was a little blood on his face, which must have come from the nose. I did not see any marks of violence on his forehead, or any other part of his head. He called my attention to none. All that he said was that he was struck in the face and that his nose bled very severely afterwards. I did not see him after that time. I looked at him, and felt of his nose to see whether there was any fracture there. I did not notice any scar. I could not say that I noticed whether his eye looked as it does to-day, but I think it did. It did not look any worse. I don't think there was any difference. Do not believe I was examining him five minutes. His face was not swollen, nor

Tordeck vs. Romadka.

his eye; his nose was. I called at the house about the middle of July to see him, but he was out. I wanted to know why he was out, and they told me he had gone to work. It was about a month or six weeks after the time."

Upon substantially the foregoing evidence the case was submitted to the jury, and the learned circuit judge, in calling the attention of the jury especially to the testimony of Dr. Miller, did so with a view of calling their attention to the professional evidence bearing upon the nature of the injury and its permanence or otherwise; and it would seem that, if any one was prejudiced by so calling the attention of the jury to the medical testimony as being of the most importance in the case, it would be the plaintiff, instead of the defendant, as he and his other witnesses had testified at considerable length upon the subject of his injuries, and their effects upon his health and ability to work. It is evident, however, that these remarks of the learned trial judge could not have prejudiced the jury against the defendant, as they were immediately followed by the following remarks by the learned judge:

"You have heard all the evidence relating to the plaintiff's appearance and conduct after his alleged hurt, and it is for you to determine, upon all the evidence, how seriously he was hurt; whether or not he was and is afflicted with dizziness, the result of this hurt; whether or not he was and is wholly or partially disabled; and, if so, for how long a time was he wholly disabled, and how long has he been partially disabled, and how long is he likely to be partially disabled as the result of this unlucky blow? These are facts for you to determine first; and from these facts it is for you to determine, as men of sound judgment, what his compensation should be, because compensatory damages consist of a reasonable compensation for the injury and the loss suffered."

It seems to us there was nothing in the charge, taken as

a whole, which could have prejudiced the case of the defendant, and that the charge fairly submitted the case to jury. The case is clearly distinguishable from the case of *Valley L. Co. v. Smith*, 71 Wis. 304. In the case at bar, while the learned judge made some comment upon the testimony of Dr. Miller as bearing upon the extent of plaintiff's injuries, he did not ignore the other evidence in the case, but told the jury they were to consider all the testimony bearing upon that point, and determine the matter upon the whole evidence in the case. The case is not brought within the rule stated in *Int. Life Ins. Co. v. Scales*, 27 Wis. 640; *Benjamin v. Covert*, 55 Wis. 157.

The learned trial judge refused to set aside the verdict and grant a new trial on the ground that the verdict was excessive, and we are asked to reverse the order of the trial judge upon that motion. If the injury received by the plaintiff was of as serious a nature as the testimony of the plaintiff and his witnesses tends to show, we cannot say that the damages are excessive. The learned circuit judge was undoubtedly of the opinion that the testimony on the case fairly tended to establish the fact that the plaintiff was seriously injured by the blow given by the defendant, and although it might have been wholly unintended by the defendant, still he must make full and adequate compensation for the actual injuries resulting from such blow.

The case seems to have been fairly tried, and, no errors appearing in the record, the judgment must be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.