[No. 6,030.]

## DINGLEY ET AL. *v.* GREENE ET AL.

MECHANICS' LIENS.—Under the provisions of the Code of Civil Procedure relating to liens of mechanics, the liens of employés of the original contractor are enforceable only to the extent of the money due on his contract, and in subordination to its terms. If the original contractor fails to perform his contract, or if he has performed it in part, and there is no money due to him according to its terms—or if, having performed it, he has been fully paid by the owner of the property, according to the contract, before notice of the liens—his employés are not entitled to enforce a lien upon the property.

ID.—Where the contract provided that payments should be made on the certificate of the architect—who was required by the contract, among other things, to certify that all the work of the mechanics, laborers, and others employed by the original contractor, had been paid—his certificate is conclusive of the rights of all parties concerned, unless it can be shown that it was obtained by the owner by collusion or fraud.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Twelfth District Court, City and County of San Francisco. DAINGERFIELD, J.

From the findings of the Court, it appears that McMeekan (the original contractor) received $11,675 before he absconded; that McCann (the contractor who completed the building) received $10,800; and that defendant Greene paid a watchman, between the absconding of McMeekan and the substitution of McCann, $71; in all, $22,546; and the judgment was for $1,454—the difference between this and the original contract price of $24,000.

The other facts are stated in the opinion.

*McAllisters & Bergin*, for Appellant.

The performance of the McMeekan contract was a fundamental condition, without which there could be no claim for any lien under it. (*Blythe* v. *Poultney*, 31 Cal. 237–8.) Work done and materials furnished are done and furnished subject to the terms of the contract under which the buildings were agreed to be constructed, and all claims of liens must be subordinated thereto. (*Henley* v. *Wadsworth*, 38 Cal. 36;

*Shaver* v. *Murdock*, 36 Id. 298; *Dore* v. *Sellers*, 27 Id. 594; *Bowen* v. *Aubrey*, 22 Id. 570; *Wells* v. *Kahn*, 51 Id. 424.)

*Walter Van Dyke, Thomas V. O'Brien, Chas. P. Goff*, and *L. S. Clark*, for Respondents.

We were entitled to a distribution of the $1,454. (Civ. Code, § 1667.) The decisions determine that the house-owner's property is liable to the extent of benefit received, for which he has not paid: (*Moore* v. *Jackson*, 49 Cal. 109; *Quale* v. *Moon*, 48 Id. 482; *Whittier* v. *Wilbur*, 48 Id. 175.)

The evidence and findings show that the non-completion of the buildings was caused by the absconding of the contractor, who took away with him some $6,400, the proceeds of the last two payments, which should have been paid to the respondents; and that his absconding was facilitated, if not primarily caused, by the gross carelessness or collusion of the owner's agent, the architect; who gave his certificate for the money prematurely, and in violation of the terms of the contract, requiring him to be notified that the material-men were paid.

Department No. 1, McKEE, J.:

This is a suit which includes several actions consolidated into one, to recover judgment against the defendant McMeekan for the sum of $4,784.71, and to enforce mechanics' liens as security for its payment, upon the premises described in the complaint as the property of the defendant Greene.

It appears by the record, that on the 22nd day of September, 1875, the defendant McMeekan made a contract with his co-defendant Greene to build for her several houses upon her land in the city of San Francisco for the sum of $24,000, payable in nine installments, from time to time, as the work progressed; and it was part of the contract that the houses were to be completed on or before the 11th day of February, 1876; that McMeekan was to furnish all labor and material necessary and proper to finish the work, and if he failed to complete the buildings within the time stipulated, he was to forfeit $35 a day for every day over the contract time. McMeekan commenced the

work, and worked upon the houses until November 12th, 1875, when he abandoned the contract, after having received five installments of the contract price, and absconded from the State, leaving the plaintiffs and others, as his material-men and workmen, unpaid. To complete the work thus abandoned, the owner on the 3rd of December, 1875, made a contract with other contractors for the sum of $10,800. The houses were finished by the last contractors; and within thirty days after they were completed, the plaintiffs and others filed liens, which they seek in this action to foreclose.

By part 3, title 4, chapter 2, of the Code of Civil Procedure, the principal and subsidiary contractors in a building contract, who by their skill, labor, or materials, create or improve the property of another, are entitled to a lien upon the property itself to secure payment of the value of the services, or the material furnished, within the limits of the price as fixed by the contract between the owner and the original contractor. Liens to that extent may be filed by the original contractor and his employés; but for the creation and attaching of such liens, performance of the work is a condition precedent. If the contract is an entirety, no liens can be filed from time to time as the work progresses, or for partial performance. (*Cox* v. *W. P. R. R. Co.* 44 Cal. 18.) Liens must be filed within thirty days after the completion of the building, and they are enforceable only to the extent of the money due upon the contract made by the original contractor, and according to its terms. (*Dore* v. *Sellers*, 27 Cal. 238; *Blythe* v. *Pulteney*, 31 Cal. 233.) If the original contractor fails to perform his contract, or if he has performed it in part, and there is no money due to him according to its terms—or if, having performed it, he has been fully paid by the owner of the property according to the contract, before notice of the lien—neither he nor his employés are entitled to enforce a lien upon the property.

In *Renton* v. *Conley*, 49 Cal. 185, the late Supreme Court, in construing the Act of March 30th, 1868, held, that notwithstanding the broad language of the statute, where the owner had made payments to the contractor in good faith under and in pursuance of the contract, before receiving notice, either

actual or constructive, of the liens, the material-men and laborers could not charge the buildings with liens exceeding the balance of the contract price remaining unpaid when notice of the lien was given. (*McAlpin* v. *Duncan*, 16 Cal. 127 ; *Bowen* v. *Aubray*, 22 Id. 571.) And it was decided in *Wells* v. *Cahn*, 51 Cal. 424, that §§ 1183 and 1192 of the Code of Civil Procedure (as amended in 1874) wrought no change, in that respect, in the Act of 1868.

Therefore, if there is no existing lien on the original contract, none exists on the subsidiary contract. The liens to secure the latter are wholly dependent on that of the former. The contracts of material-men and workmen with the original contractor are made with reference to his contract with the owner, and in subordination to its terms. (*Henly* v. *Wadsworth*, 38 Cal. 356.) When, therefore, the original contractor in this case abandoned his contract after partial performance, there was nothing upon which the lien of the plaintiffs could attach, unless there was something due by the owner upon the contract for the work which the contractor had done. But, according to the indisputable evidence in the case, there was nothing due by the owner at the time of abandonment, because she had paid all of the installments of the contract price due at that time. These payments were made upon certificates of the architect of the buildings, whose duty it was to certify that the several installments of the contract price had become due, according to the terms of the contract, before payments could be made. It is true that the original contractor had to satisfy the architect that all materials furnished by him for the construction of the buildings, and all the work of the mechanics, laborers, or others employed by him, had been paid, before he was entitled to the certificates, so that no liens could be filed upon the buildings ; and the Court below finds that the architect, at the time he gave his certificate to the original contractor, knew that the material-men and workmen had not been paid. But there is no finding that the owner knew that fact, nor is it charged that she did know of it. Whatever faithlessness there may have been on the part of the architect in giving his certificates to the contractor, it cannot affect or prejudice the good faith of the owner

in making her payments upon the faith of those certificates, for it was the mode of payment which had been agreed upon; and not only is the original contractor bound by his contract, but his material-men and workmen are also presumed to have had notice and knowledge of the terms of it, and of the rights and obligations of the parties thereto. (*Shaver* v. *Murdock*, 36 Cal. 293.)

There is nothing in the contract or the Mechanics' Lien law which required the architect to give notice of his decision that the contractor was entitled to his certificates.    Such a provision, if it existed in the law, might afford some protection to those who have to do with dishonest contractors.    But in the absence of such a provision, the certificate of the architect must be considered conclusive of the rights of the parties under the contract, unless it can be shown that it was obtained by the owner, by collusion, or fraud, or mistake.    But there is nothing in the record to show that she acted otherwise than *bona fide* in making her payments upon the certificates.    There is no evidence whatever tending to show collusion or fraud between her and the architect or the contractor.

As, therefore, the owner had strictly complied with her contract, and there was nothing due upon it from her to the contractor for the work which had been performed by him when he abandoned it, his employés have no liens under the law which can attach to the buildings after they were completed by other contractors, unless the buildings were completed by the creditors of McMeekan in performance of McMeekan's contract, or by the owner for their benefit.    It is not claimed that the creditors of the original contractor completed the buildings; but the Court below finds: " That after the absconding of said McMeekan, and before the completion of the buildings mentioned herein, one Richard McCann, by the consent of the parties to these actions, was substituted for said McMeekan as the contractor of the defendant Greene, upon the same terms and conditions as in the contract with defendant McMeekan, and that thereupon said McCann fully completed said buildings in accordance with the contract with defendant McMeekan as aforesaid; and that upon the completion of said building, McCann

received from the owner, Mrs. Greene, the sum of $10,800, according to his said contract."

We cannot find in the record any evidence to sustain this finding. There is nothing, indeed, tending to show that the owner knew of or consented to any arrangement whatever to complete the buildings for the benefit of the absconding contractor or his creditors; and there could not be a substituted performance without her knowledge and consent. (*Civil Code*, § 1532.) Upon that subject the testimony of the witnesses is all one way. McCann, the last contractor says: "I refused to contract with the McMeekan creditors to complete the buildings." Townsend, the architect, says: "Mrs. Greene had never given any orders to have the creditors go on and finish the house. * * * She had nothing to do with it at all." Mrs. Greene, the owner of the buildings, says: "I never agreed at any time with any of the creditors of McMeekan to let them go on and complete the buildings, according to contract; nor did I ever authorize any one to make such a contract or arrangement on my behalf. * * * I made the contract with the McCanns for the completion of the buildings. I made that contract with the McCanns of my own motion, without any connection with any of the creditors of McMeekan, and not as part of any arrangement with any of them. It was not part of any arrangement with any of the creditors of McMeekan." Hawkins, the agent of Mrs. Greene, says: "The completion of these buildings was not made by any agreement or under any arrangement with McMeekan."

These are the only witnesses upon the subject, and their evidence conclusively shows that the buildings were completed by Mrs. Greene upon her own responsibility, and without any privity or concurrence on the part of the McMeekan creditors. That being the case, the plaintiffs in these actions, who were creditors of the absconding contractor, have no liens which can be enforced against her.

Judgment and order denying a new trial reversed, and cause remanded.

McKINSTRY, P. J., and ROSS, J., concurred.