VALLEY LUMBER COMPANY, Respondent, vs. SMITH and another, Appellants.

*March 1 — March 27, 1888.*

*Contracts: Evidence: Purchase price: Value: Objections to account rendered: Instructions to jury.*

1. Where there is a direct conflict of testimony as to the price orally agreed to be paid for property, evidence of its real value at the time of the contract is admissible.

2. There being a direct conflict in the evidence as to whether the defendants objected to a bill or account presented by the plaintiff, it was error for the court to ignore or suppress the evidence on the part of the defendants and to charge the jury that where no objections are made to a bill presented it is *prima facie* evidence of the correctness thereof.

3. One of the defendants testified that at the time of making a contract he made a memorandum of its terms in a book kept for such

purposes. The memorandum. was introduced in evidence, and there was no evidence tending to impeach the credibility of the witness in respect thereto. *Held*, that it was error for the court, in charging the jury, to cast suspicion and doubt upon the defendant's testimony and to call special attention to the criticisms of plaintiff's counsel upon the memorandum.

APPEAL from the Circuit Court for *Eau Claire* County. The case is stated in the opinion.

For the appellants there was a brief by *J. H. Opdale* and *James Wickham*, and oral argument by *Mr. Wickham*. *W. F. Bailey*, for the respondent.

ORTON, J. This action is brought to recover a certain sum for goods, wares, and merchandise, and $200 for the use or lease of certain logging camps during the winter of 1883 and 1884, situated on a certain forty acres of land belonging to the plaintiff, which had been denuded of its timber or stumpage. The only matter controverted on the trial was the claim for $200 for the use of said logging camps. This the defendants denied in their answer. The only witness for the plaintiff on that question was one Carson, the president of the plaintiff company, who testified that the contract for the use of the logging camps was made by him when he and *Smith*, one of the defendants, were alone, and that such was the contract. The defendant *Smith* testified with great positiveness that the defendants never made any such contract, but that the contract was that the defendants should pay the plaintiff $200 for a good title of the said forty acres of land, with the old camps thereon, which were dilapidated and of scarcely any value whatever. Another witness, who claimed to have been present when the contract was made, testified that the said Carson, the president of the company, said, "I will do better by you than by the other man. I will give you the logging camps and the forty acres of land

the camps stand on for $200, and give you title." Another witness testified that he heard the said Carson substantially admit that he had sold the defendants the camps and the forty acres. The testimony tended to show that the defendants, the winter before, had been troubled by some one shutting up their roads across the said forty-acre lot, which they used in their logging business on other lands in the vicinity, and that they wished therefore to own and have full control of that lot, so as to prevent such annoyance. The said Carson on cross-examination testified that "*Smith's* object was to purchase those camps, and get the forty acres of land on which they stood, so that he might control the roads on account of this trouble;" and he further testified, "I would give him title to the forty acres of land if I had known he wanted it. It would not have been any detriment to have deeded it to him. I would not give him the title now if he paid the money. I never agreed to."

This is a sufficient statement of the case to show the pertinency of the exceptions. The jury rendered a verdict for the plaintiff of $238.62, presumably for the $200 for the use of the logging camps, and interest. To reverse the judgment rendered on this verdict, the appellants allege the following errors:

*First.* The appellants offered and asked questions tending to show the real value of the logging camps at the time, and that they were useless to the plaintiff, as the timber had all been cut off the forty acres, and that they were not in a condition to use until repaired, and that they were of no value whatever, for the purpose of corroborating the testimony of the defendant *Smith* and of the other witnesses as to what the contract was. The court sustained the objection of the plaintiff to such offer and questions. This was clearly erroneous. This was a very strong case for the application of the rule that such corroboration is proper

when there is a direct conflict of the evidence as to the contract price to be paid for the property in question. If the logging camps were of the value of $200 or more, then the plaintiff's version of the contract would be quite probable as against the testimony for the defendants that such consideration was to include the title of the forty acres also. On the other hand, if the camps were of little or no real value to any one, then the testimony of the defendants would be quite probable as against the testimony for the plaintiff that the defendants agreed to pay $200 rent for the use of such camps for one winter. This is agreeable to common reason, and logical, and such evidence is approved by the authorities. The evidence disapproved in *Kvammen v. Meridean Mill Co.* 58 Wis. 399, was as "to the *usual* price for sawing laths the season before." It did not relate to the price or value of the thing itself which was the subject of the controversy and of the contract. In that case Mr. Justice Cassoday said in the opinion: "It may be, as intimated by Mr. Justice Cooley in *Campau v. Moran*, 31 Mich. 280, that where the evidence adduced upon both sides is in direct conflict, and pretty evenly balanced, as to the *contract price*, evidence that the cost of performance was greatly in excess or greatly below such price might afford some reasonable ground for believing that the contract was for the price nearest the cost." This is a clear exposition of the rule. Mr. Abbott, in his work on Trial Evidence, states the rule as follows: "Where the testimony is conflicting as to what was the price agreed upon in an oral sale, or as to whether there was any agreement as to price, it is competent to show the value of the property at the time of the sale as tending to show what the real contract was." Page 305. The following cases are cited by the appellants' counsel as supporting this rule: *Richardson v. McGoldrick*, 43 Mich. 476; *Misner v. Darling*, 44 Mich. 438; *Rauch v. Scholl*, 68 Pa. St. 234; *Allison v. Horning*,

22 Ohio St. 138; *Swain v. Cheney*, 41 N. H. 232; *Moore v. Davis*, 49 N. H. 45; *Kidder v. Smith*, 34 Vt. 294; *Johnson v. Harder*, 45 Iowa, 677; *Bradbury v. Dwight*, 3 Met. 31.

*Second.* The court, in charging the jury, after reciting the testimony of Carson, the president of the company, that he had presented to the defendants a bill or account containing this charge of $200 for the use of the camps, and that the defendants made no objections to it, but kept the bill, said to the jury: "Where a statement of account is rendered, and nothing is said about it, and no objections made, of course that is *prima facie* evidence of the correctness of the bill. . . . It is a sort of admission on his part of the correctness of the bill." Aside from the fact that this claim is not a matter of book-account, or of an account rendered or bill presented, but the subject of a special contract, and such a principle of law has no application to it, it was unfair for the court to ignore or suppress the testimony of the defendant *Smith*, that he did at the time object and insist that he had never hired or rented the camps, but that he had bought the forty acres, with the camps upon it. The jury might forget that evidence, and from this charge of the court take it for granted that the defendants had assented to the claim by not objecting to it, and might have been, and probably were, thereby misled as to the evidence.

*Third.* The defendant *Smith* testified that he made a memorandum of the contract of the purchase of the forty acres and the camps on it at the time in a memorandum book which he kept for such matters of business, and said memorandum was introduced in evidence. The court, in commenting upon this evidence to the jury, and after saying "that it tended to show that he *(Smith)* was not mistaken as to what the contract was," said, "Of course, *if he really made* that memorandum," etc. "You have heard the criticisms of counsel upon that memorandum. It is your duty to consider whether that was really a memorandum

made *at that time.*" This was very unfair, as well as a very serious error. There was no evidence tending to impeach the credibility of the defendant *Smith* in respect to his having made at the time this memorandum, or tending to cast any suspicion upon his evidence in that respect. The court cast suspicion and doubt upon this evidence, without any other grounds than the unrestrained and groundless *criticisms* of the opposing counsel in his argument. The attention of the jury is not called to the testimony on this point, except with an unauthorized proviso, " if he really made the memorandum," and " whether it was really made at that time." But the special attention of the jury is called to· " the criticisms of counsel upon that memorandum."

There are other errors assigned, but they may not occur upon another trial, and are· not very material. We are inclined to think that if the above errors had not been committed, the verdict would have been in favor of the defendants.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.