Argued June 25, decided July 2; rehearing denied July 16, 1912.

### PERRY v. HUNT.

[125 Pac. 295.]

APPEAL AND ERROR—OBJECTION BELOW—SUFFICIENCY—EVIDENCE—MOTION TO STRIKE OUT.

1. Where a question asked a witness is answered before any objection is made, a motion must be made to strike out the answer, or the admission of the evidence is not reviewable on appeal.

TRIAL—INSTRUCTIONS—REMARKS OF COURT ON RULINGS ON EVIDENCE.

2. Where, in an action for damages for breach of a railroad construction contract, plaintiff claimed that he was compelled to quit work because defendant overcharged him for supplies, remarks of the court in ruling on evidence on the issue that it did not remember that the contract made any provision requiring defendant to furnish supplies, but that, if the act of defendant terminated the relations, plaintiff could go to the jury, must be treated as instructions, and their correctness must be determined by the contract.

CONTRACTS—BUILDING CONTRACTS—CONSTRUCTION.

3. A written subcontract for the construction of a railroad roadbed, which fixed the compensation for the removal of specified material at so much a yard, governs a subsequent oral agreement to pay a specified amount over the contract price for the use by plaintiff, one of the subcontractors, of equipment, owned by him individually, and affords the means of computing the sum to be paid for grading the roadbed by the use of his machinery, but, where the plaintiff and his associates were wrongfully prevented from performing the written subcontract by the

contractor terminating it and seizing plaintiff's equipment, plaintiff was deprived of the compensation he might have earned by the use of his equipment, and compensation plantiff might have earned must be considered in estimating the damages.

CONTRACTS—ACTION FOR BREACH—VARIANCE.

4. Where the complaint in an action for breach of an oral agreement for the construction of a railroad roadbed alleged that plaintiff, the contractor, fully performed the agreement until a specified time, when the adverse party unlawfully terminated the contract and seized the contractor's equipment, and thereby prevented the contractor from completing the work, the failure to complete the work could not be excused on the ground that the adverse party had failed to furnish supplies to the contractor pursuant to the contract

CONTRACTS—BUILDING CONTRACTS—ESTIMATES BY ENGINEERS.

5. Where an engineer in charge of railroad construction work refused to make an estimate, the contractor could sue for the work done and establish the amount due him.

From Lane: LAWRENCE T. HARRIS, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by George Perry against W. B. Hunt and W. Hunt, copartners as Hunt & Son, to recover compensation for the use of machinery, tools, etc., and damages for an alleged breach of an agreement. The facts are that the defendants, having engaged to construct a part of a line of railway, entered into a written contract November 1, 1909, whereby the plaintiff and his associates stipulated to grade the roadbed between engineer's stations 1425 and 1437 in Lane County, Oregon, at various prices for different classes of work. Thereafter the defendants made an oral agreement with plaintiff, pursuant to which the latter brought from California to the stations mentioned a power drill, track, tools, etc. The complaint states the facts in substance as hereinbefore detailed, and alleges that, for moving the equipment to Oregon and using it in breaking and removing solid rock between the points designated, plaintiff was to have been paid five cents per cubic yard in excess of the contract price for such work; that by the use of plaintiff's machinery and tools there had been broken

Sig. 9

down and removed, on August 20, 1910, 27,000 cubic yards of such material for which the defendants became indebted to plaintiff in the sum of $1,350; no part of which had been liquidated. For a second cause of action the complaint states the preliminary facts necessary to the maintenance of the first cause, and also avers that plaintiff fully performed the terms of the oral agreement until August 20, 1910, when the defendants unlawfully terminated the contract, seized the equipment, and thus prevented him from breaking down and removing 15,000 cubic yards of rock then remaining, to plaintiff's damage in the sum of $750, no part of which had been paid.

The answer admits that defendants are copartners and engaged in railroad construction, but denies every other allegation of the first cause of action. For a separate defense thereto, the answer sets forth the substance of the written contract and avers that soon after November 1, 1909, the defendants agreed to give plaintiff, for the use of his equipment, one cent per cubic yard in addition to the price stipulated for the grading, which payment was to have been made when the work was completed and the quantity of material removed had been determined by the engineer's estimate thereof; that plaintiff failed to supply sufficient tools, whereupon defendants, in order to complete the grading within the time required, were compelled to and did secure a large quantity of other appliances; that the grading had not been completed, nor had an estimate of any part of the work done by plaintiff been made by the engineer who was to perform that duty; that on August 20, 1910, plaintiff, in violation of his agreement and against defendants' wish, abondoned the grading and refused to do any more work; and that defendants have performed their part of the written contract and of the oral agreement, and by reason of plaintiff's refusal to keep his engagements they are not indebted to him in any sum. For answer to the second cause of action it is

admitted that defendants are copartners, but every other allegation of that part of the complaint is denied.

The averments of new matter in the answer are denied by the reply, which pleading further alleges that defendants, for the purpose of defrauding plaintiff and his associates and of avoiding the terms of the contracts, unlawfully took possession by force of their commissary supplies and outfit and terminated the agreements, thereby making it impossible for plaintiff and his associates to continue the grading.

Based on these issues, a trial was had resulting in a verdict for the sums demanded in the complaint, and, judgment having been rendered thereon, the defendants appeal.                    Conditionally Affirmed.

For appellants there was a brief over the names of *Messrs. Williams & Bean* and *Messrs. Skipworth & Pipes,* with oral arguments by *Mr. Lark Bilyeu* and *Mr. John M. Williams.*

For respondents there was a brief over the names of *Messrs. Thompson & Hardy,* with an oral argument by *Mr. Charles A. Hardy.*

Mr. Justice Moore delivered the opinion of the court.

The defendants' counsel introduced in evidence the original contract which provides that, after plaintiff and his associates had finished the grading and the work had been received by the engineer in charge thereof, the defendants were to have paid them for the removal, *inter alia,* of trap rock, basalt, or lava rock, 55 cents per cubic yard. Clauses of the contract deemed material are as follows:

"Any person or persons abandoning * * the work, shall hold no claim against the first party [the defendants]. * * After all proper deduction for wages, material, and supplies are paid by the second party [the plaintiff and

his associates] the first party upon receipt of estimate and work agrees to pay prices as aforementioned in this agreement to the second party."

The plaintiff testified that the estimate of 27,000 cubic yards of solid rock, broken and removed in the construction work as stated in the complaint, was correct. This witness, in referring to the engineer in charge of the grading at the stations indicated, stated upon oath:

"I asked Ellis if he could give me figures on that work. I would like to get his figures of as many yards as there was on the work. He said they never figured that out. It was left to the engineer at Natron, Randall, I understood. * *"

"Q. Did you ever ask the engineer at Natron to figure it?"

"A. No."

Oscar Ellis, the engineer mentioned, testified that he had not been requested by plaintiff nor by any person for him to ascertain the amount of grading that had been done by Perry and his associate under the contract.

Testimony was admitted tending to show that on August 21, 1910, the defendants seized the plaintiff's equipment, and at the same time took possession of the commissary supplies belonging to him and his associates. This testimony was denied by the defendants. It ~~~~~rs, however, that, at the time last stated, the defendants placed on the part of the grading then remaining to be finished between the stations referred to other employees who used some of plaintiff's tools.

Dominick Crosta, one of plaintiff's associates, was asked: "Where were you on the 20th day of August?" and he answered: "In Eugene. * *"

"Q. What did you come to Eugene for?"

"A. I came down to inform myself about the work."

"Q. What was the trouble?"

"A. The trouble was Mr. Hunt (one of the defendants) was charging too much for expenses, and we can't afford to pay that."

"Q. To what extent was he overcharging you?"

"A. Well, he overcharged over $1,000."

"Q. And you objected to that?"

"A. Yes."

Defendants' counsel thereupon said:

"We object to that. It has nothing to do with the case."

The court replied:

"Their contention (referring to plaintiff's controversy) is that Hunt compelled them to quit. Your contention is that they abandoned it (meaning the grading). Now that makes an issue. If this is an explanation why he compelled them to quit, it is competent to go to the jury."

To this observation an exception was taken, defendants' counsel further saying:

"There is nothing in the evidence, your honor, to show that there was any obligation on the part of Hunt & Son to furnish them these things, or on the part of these men to buy from Hunt & Son."

The court:

"I don't remember that the contract makes any provision for that. But if that is one of the things that brought about the severance of their relations, I think they have a right to go to the jury with it."

To this observation also an exception was taken.

The foregoing are the only exceptions reserved, and it is maintained by defendants' counsel that whether or not Hunt & Son were overcharging plaintiff and his associates for commissary supplies was not an issue in the case, and hence an error was committed in permitting Crosta to testify respecting a collateral matter that had no connection with the question involved. An exam-

ination of the testimony inveighed against will show that the only complaint interposed by defendants' counsel was that to Crosta's objection to overcharges for expenses made by Hunt & Son. It is quite probable, from the dialogue between the court and defendants' counsel, that the objection was intended to have been made to the preceding question, "To what extent was he overcharging you?"

1. The inquiry having been answered, however, before any complaint was made to the question, a motion should have been made to strike out the answer given.

2. But, however this may be, the remarks of the court will be treated as instructions to the jury, and, based thereon, the question to be considered is whether or not the language complained of was erroneous.

3. The written contract governed the oral agreement and afforded the means of computing the sum of money to be paid plaintiff for grading the roadbed by using his machinery, tools, etc., in breaking and removing solid rock. For each cubic yard of trap rock, basalt, or lava rock removed from the line of the road and deposited in the proper place, the defendants engaged to pay 60 cents, of which sum the plaintiff and his associates were to have received 55 cents and Perry the remainder. If, therefore, the plaintiff and his associates were prevented by the defendants from performing the terms of the written contract respecting the handling of that kind of material, the plaintiff in like manner would be deprived of the compensation he might have earned by the use of his equipment, and hence any change in the written contract modified to that extent the terms of the oral agreement.

4. In the second cause of action the complaint, referring to the oral agreement, charges "that said defendants violated the terms of said contract in this: That on the 20th day of August, 1910, said defendants

wrongfully and unlawfully, and to terminate said contract, and in breach thereof, seized said equipment and outfit and took possession of the same by force and prevented plaintiff from working the same, and while there remained 15,000 cubic yards of rock work to be done on said construction work above described and for which said plaintiff was entitled to receive from defendants five cents per cubic yard under the terms of said contract, and amounting in the aggregate to the sum of $750, and by reason of said breach of said contract, said plaintiff was and is damaged in the sum of $750."

It will thus be seen that the only ground assigned in the complaint for plaintiff's failure to complete the grading was defendants' seizure of his equipment. It will be remembered that the court, in referring to the question as to whether or not Hunt & Son were under any obligation to furnish supplies to plaintiff and his associates pursuant to the written contract, said in the presence of the jury:

"I don't remember that the contract makes any provision for that. But if that is one of the things that brought about the severance of their relations, I think they have a right to go to the jury with it."

This was permitting a recovery as to the second cause of action on a different ground from that stated in the complaint, and the observation of the court in this respect was erroneous.

5. There is nothing in the transcript before us tending to show that the oral agreement provided for the engineer's estimate of the solid rock broken down and removed by plaintiff's equipment as a condition precedent for the payment of the sum due therefor. Perry testified that Ellis, who is described in defendants' abstract as the engineer in charge, stated to him that he did not have to compute the amount of work performed by the witness, saying: "It was left to the engineer at

Natron." If Perry's testimony was to be believed, and that was a question for the jury to determine, that Ellis practically refused to make an estimate of the work performed, plaintiff was not thereby defeated of a remedy, but he had a right to maintain this action and to establish the amount due him as best he could.

The testimony does not show that the clause of the written contract, providing for a forfeiture of payment in case of the abandonment of the work, applied to the oral agreement. The jury made special findings as to each cause of action, and, as the remarks of the court could apply only to the second cause, the award therefor can be segregated from the general judgment.

If, therefore, within 10 days plaintiff remit the sum of $750 and pay the costs and disbursements in this court, the judgment will be affirmed, otherwise, it will be reversed and a new trial ordered.

CONDITIONALLY AFFIRMED.