Argued February 23, affirmed March 22, 1921.

O'NEILL v. EBERHARD CO.

(196 Pac. 391.)

**Master and Servant—Slight Oversale by Salesman Held not Cause for Refusing Compensation for Entire Order.**

1. Where a traveling salesman's contract of employment provided that, if he sent an order in excess of his allotment of goods to be sold, "the item will be taken off the salesman's order, and if shipped the salesman will not receive credit," the employer was not authorized, where an item of a few dollars was in excess of the allotment, to refuse to compensate the salesman for the whole order, especially where the employer turned such orders over to its mailing department and received the benefit of the salesman's work.

**Master and Servant—Employer must Exercise Good Faith in Refusing Orders upon Which Compensation is Based.**

2. Under a contract between a traveling salesman and his employer providing for commissions on orders accepted and shipped, acceptance and shipment are within the employer's discretion, fairly and honestly exercised, he not being bound to accept and ship at all events, nor has he the absolute right of refusal, it being a question of good faith, having regard to the employer's right to determine the scope and extent of his business.

Master and Servant—Salesman's Verdict for Commissions Warranted.

3. In an action by a traveling salesman for commissions upon orders taken, evidence *held* sufficient to support a verdict for plaintiff.

Appeal and Error—Court's Fact Findings Conclusive When Supported by Competent Evidence.

4. If fact findings by the court are supported by competent evidence, they are conclusive on appeal.

Account Stated — Transaction must be Final Adjustment of Respective Demands to Constitute "Account Stated."

5. To constitute an "account stated," each party must understand the transaction as a final adjustment of the respective demands between them, taken into consideration in the accounting, and binding force will not be given to the mere furnishing of an account which was not with a view of establishing a balance due, or finally adjusting the matters of account between the parties.

Account Stated—Monthly Statement by Employer to Employee as to Commissions, not Assented to, Held not an "Account Stated."

6. Where an employer sent monthly statements to its traveling salesman to which the latter did not assent, purporting to cover commissions due, such statements, in an action by the salesman to recover commissions, *held* not to have the finality of an account stated.

From Multnomah: Robert G. Morrow, Judge.

Department 2.

Plaintiff brought this action to recover salary and commissions earned as a traveling salesman for defendant. The cause was tried by the court without the intervention of a jury. Findings of fact were made, and a judgment rendered in favor of plaintiff for $774.74. Defendant appeals.

The defendant is a California corporation conducting a selling agency on the Pacific coast for Ingersoll watches and fobs, Gem razors and Evans fountain-pens. Plaintiff is a traveling salesman and was employed by defendant on December 21, 1917, to solicit orders for its goods in certain territory in Oregon

5. Authorities discussing the question as to what constitutes an account stated are collated in notes in 20 Ann. Cas. 626; 27 L. R. A. 811.

and Washington, and began work under the contract January 1, 1918. His compensation was to be 8 per cent on all orders taken by him and accepted and shipped by defendant. The contract was partially in writing, a portion of which is as follows:

"Drawing Account or Guarantee.

"You will be allowed a drawing account at the rate of $125 per month—payable at the end of each calendar month.

"Earning Account.

"We will keep an Expense and Earning Account with you and the earning credit that will accrue to this account will be as authorized by us from time to time on all orders accepted by us and shipped to the trade during the month on our product.

"Gem orders shipped through the jobber will have an earning credit. The earning credit on Evans pens—as authorized from time to time by us.

"It is understood that each month, we will assign to you a certain allotment of models of Ingersoll Watches and that you agree to sell this entire allotment. Should you fail to dispose of any part of this allotment, you agree to be subject to a penalization, as adopted from time to time on the total dollars and cents value of any part of your allotment not disposed of during the current month—the penalization to be charged to your Expense and Earning Account.

"The penalization on Evans and Gem lines will be established from time to time. * *

"The credit side of your Expense and Earning Account will show an earning credit, arrived at from the orders taken by you and shipped during the month and the permanent advertising placed by you during the month. Against this earning credit will be charged all of your expenses—such as car fare, transportation, automobile expenses, hotel bills, etc., when traveling on the road, or any expenses that you may incur—also your $125 per month drawing account.

"The balance, either debit or credit, of this Expense and Earning Account will be carried forward

from month to month, and if, at the end of the year 1918, same shows a' balance in your favor, disbursement will be made to you at that time.''

Plaintiff was permitted to draw $125 per month and his expenses against his earning account as an advance on commissions to be earned, and under a guaranty that his earnings should not be less than that amount. On July 3, 1918, he was notified that his services would be discontinued on the thirty-first day of that month.

The complaint alleges, *inter alia,* that pursuant to his employment plaintiff sold merchandise aggregating $28,787.56, on which amount defendant agreed to pay him 8 per cent commission amounting to $2,303.01, only $1,792.75 of which has been paid, leaving a balance of $750.39 due plaintiff. Plaintiff also claims $75.11 for making a trip for defendant during December, 1917, and some expenses at different dates; that he advanced money for defendant amounting to the sum of $75.11, upon which the court allowed $67.50; and that the defendant also agreed to pay plaintiff certain prices for fixing signs, in doing which it is admitted plaintiff earned $126.05.

The answer denies plaintiff's averments, and alleges that by the contract of employment the defendant promised and agreed to keep an expense and earning account with plaintiff and to credit such account with 8 per cent commission for all orders for watches, fobs, razors, and pens sold by plaintiff to customers *out of plaintiff's respective monthly allotments* which were accepted by defendant and shipped to such customers; that the total amount of plaintiff's orders for all such merchandise shipped by defendant is $21,964.60 on which plaintiff's commission is $1,757.16; that plaintiff's expense and earning ac-

99 Or.—44

count was credited with such amount, and the whole thereof was paid to him. The answer also pleads that once each month during plaintiff's employment defendant rendered and forwarded to plaintiff a written statement of account as provided by the contract, and that plaintiff never objected to the correctness thereof. Defendant claims this as a stated account.

The reply puts these matters in issue. At the conclusion of plaintiff's testimony defendant moved for a judgment of nonsuit, which was denied, and an exception was saved. Defendant tendered findings of fact and conclusions of law which were rejected by the court, to which defendant excepted. Defendant also excepted to the making of each of the findings and conclusions for the plaintiff. Finding No. 10 requested by defendant is as follows:

"That plaintiff obtained and forwarded to defendant orders for goods aggregating about $5,692.53, in excess of the total of $21,982.68 referred to in Finding IV above, but defendant did not accept nor ship said orders, nor include the same in the monthly statements of orders shipped as referred to and described in Finding IX above."

The court found in favor of plaintiff on all the amounts for which he claimed commission, with the exception of two orders of which defendant refused to ship a portion, making the amount of the orders taken by plaintiff which were turned over to, accepted, and shipped by the defendant of the total sum of $28,595.26.        AFFIRMED.

For appellant there was a brief over the name of *Messrs. Bauer, Greene & McCurtain,* with an oral argument by *Mr. Thomas G. Greene.*

For respondent there was a brief and an oral argument by *Mr. O. A. Neal.*

BEAN, J.—The controversy in this case, with the exception of some small items which are not contested, centers around the following proposition: As will be noticed by the portion of the contract set forth, it was understood that the plaintiff was assigned a certain allotment of models of Ingersoll watches for each month and was to be penalized if he failed to dispose of any part of the allotment. Owing to war conditions and interruptions of freight transportation, and a shortage of shipments from the factories, he was required by instructions not to oversell his monthly allotment. A portion of one instruction reads as follows:

"If a salesman sends in an order in excess of his allotment, the item will be taken off the Salesman's order, and if shipped the salesman will not receive credit."

The defendant contends that a large number and amount of the orders sent in by the plaintiff were turned over to the trade mail department and shipped through it, claiming where plaintiff sent in an order which included an item overrunning his allotment, that it had the right to take the entire order from the plaintiff and turn it over to the trade mail order department, ship to the customer, and credit the trade mail department with the order. The plaintiff's testimony shows that he made no claim for any order over and above his allotment. The portion of the original instruction above quoted clearly shows that only the item oversold was to be taken off, and not the entire order. The contract in addition to the portion above set forth specifies many details for the government of the salesman. Among the last we read:

"You must be subject at all times to the rules and instructions issued by us and our principals through us as to the conduct of yourself and your work while in our employ."

1. The contract is specific as to what sales the plaintiff should be paid for. As to the amount of the commission, although not mentioned in the contract, it was agreed between the parties and there is no dispute in regard thereto. We are inclined to the belief that the instructions which were contemplated to be given to the plaintiff by the defendant under the terms of the contract were to be of general matters or details which would not be in direct conflict with specified terms of the contract. Such instructions should be reasonable and fair and in conformity to the ordinary course of conducting such business. We notice if plaintiff should fail to sell his entire allotment he would be subject to a penalty. He might well anticipate that some portion of his orders would not be shipped, for the reason the customer might not be satisfactory to his principal. Under such conditions the only way for him to be reasonably certain that his allotment would be sold in full would be to make some oversales to offset any rejected orders. Therefore, in accordance with the contract and the original instruction, the defendant would not be authorized where an item of a few dollars was in excess of the allotment, to refuse to compensate plaintiff for the whole order, especially as the defendant turned such orders over to the trade mailing department and received the benefit of plaintiff's work. Plaintiff's testimony indicated that he sold more goods than he is claiming commission for. He makes no claim for goods sold over the allotment.

2. It may be conceded that under such a contract defendant retained the right to control its own business. Acceptance and shipment of the orders are within the discretion, fairly and honestly exercised, of the employer. He is not bound to accept and ship at all events, nor has he the absolute right of refusal. It is a question of good faith, having regard to the employer's undoubted right to determine the scope and extent of his own business: *Friede* v. *White Co.* (D. C.), 244 Fed. 272, 274; *Wolfson* v. *Allen Bros. Co.*, 120 Iowa, 455 (94 N. W. 910); *Temby* v. *Wm. Brunt Pottery Co.*, 127 Ill. App. 441, affirmed in 229 Ill. 540 (82 N. E. 336); *Stone* v. *Argersinger*, 32 N. Y. App. Div. 208 (53 N. Y. Supp. 63); *Savior* v. *Lang*, 171 N. Y. Supp. 45; *Madden* v. *Equitable Life Assur. Soc.*, 11 Misc. Rep. 540 (32 N. Y. Supp. 725, 756).

It is contended by the defendant that the plaintiff failed to allege acceptance and shipment of his orders or to aver the defendant willfully, arbitrarily, and without just cause refused to ship such orders, and therefore the complaint is insufficient. The plaintiff does not use the language suggested by the defendant, but does allege:

"That the defendant promised and agreed to allow and pay to plaintiff a commission of 8 per cent on all watches, razors, pens and fobs sold by plaintiff on accepted accounts and within plaintiff's allotments within plaintiff's said territory, provided for in said contract."

3. Plaintiff further avers that, pursuant to said employment, plaintiff sold for the defendant goods of the amount alleged, on which the defendant promised and agreed to pay plaintiff a commission. The plaintiff practically avers that he sold the goods under the terms of the contract. There was no mo-

tion to make the complaint more definite and certain. No demurrer was interposed to that pleading. We think the complaint was sufficient to support a verdict. The findings of fact made by the court take the place of a verdict.

4. The plaintiff's testimony tended to show that all orders for which he was allowed a commission were accepted and shipped by defendant, and that such orders were within his monthly allotments. The findings of the court are conclusive as to the facts found, if there is any competent evidence to support them: *Savage* v. *Salem Mills Co.,* 48 Or. 1 (85 Pac. 69, 10 Ann. Cas. 1065); *Thompson* v. *Sargent,* 66 Or. 384 (134 Pac. 7); *Fields* v. *Western Union Tel. Co.,* 68 Or. 209 (137 Pac. 200); *Smith* v. *Badura,* 70 Or. 58 (139 Pac. 107); *Gorman* v. *McGowan,* 44 Or. 597 (76 Pac. 769); *Miles* v. *Swans n,* 47 Or. 213 (82 Pac. 954). There being competent evidence to support the findings of fact made by the trial court, they should not be disturbed.

The defendant also relies upon the statements which it sent to plaintiff from month to month as being an account stated. The testimony on behalf of plaintiff shows that he objected to these statements; that when they notified him there was something taken out of his account and put in the trade mail department, he objected and wrote letters protesting against such procedure; that when he sent in a complaint for not receiving credit for certain orders, defendant's manager said, "Never mind that," it might be they did not have the goods in and that they would come in the future months, so there was no fundamental basis that he could go by of knowing what was coming to him; and that a "great many orders went in toward the end of the month, and they

didn't have time to get in on the month." The court found that defendant had failed to establish its claim of an account stated, and the evidence purported to support the finding.

5, 6. To constitute an account stated, each party must understand the transaction as a final adjustment of the respective demands between them taken into consideration in the accounting. The binding force of an account stated will not be given to the mere furnishing of an account which was not with a view to establishing a balance due, or finally adjusting the matters of account between the parties: 1 C. J., p. 683, § 259; 1 R. C. L., p. 207, § 3. The monthly statements sent by defendant to plaintiff, as indicated by the testimony, did not have the finality necessary to constitute them an account stated. The testimony on behalf of plaintiff indicated that he did not assent to the same.

We find no error in the record. Therefore the judgment of the trial court is affirmed.   AFFIRMED.

BURNETT, C. J., and JOHNS and BROWN, JJ., concur.