Argued November 1, 1949, reversed and remanded February 15, petition for rehearing denied April 25, 1950

## HALVORSON *v.* BLUE MOUNTAIN PRUNE GROWERS COOPERATIVE, A CORPORATION

214 P. (2d) 986

217 P. (2d) 254

662

*John F. Kilkenny,* of Pendleton, argued the cause for appellant. On the brief were Raley, Kilkenny & Raley, of Pendleton.

*W. C. Winslow*, of Salem, argued the cause for respondents. With him on the brief was George H. Corey, of Pendleton.

Before LUSK, Chief Justice, and BRAND, BAILEY, HAY and PAGE, Justices.

HAY, J.

The plaintiffs are building contractors. On April 2, 1945, they entered into a contract in writing with defendant to construct an addition to defendant's fruit-packing and storage plant at Milton-Freewater, Oregon. We shall refer to plaintiffs as "the contractors" and to defendant as "the owner".

The contract provided that the contractors should furnish all materials for the construction of the building, and perform all the work of construction, in accordance with certain drawings, specifications, and docu-

ments prepared by the architect. The work was to be completed on or before June 1, 1945, under penalty of $100 as liquidated damages for each calendar day's delay in completion beyond that date.

The contract price was $47,403, payable by monthly installments on or about the 10th day of each month, each such installment to cover 85 per cent of the work completed during the previous month. The amount of each payment was to be determined by the architect, and payment thereof authorized by his certificate.

The work was not finished within the time limited by the contract, but the contractors claim that it was completed on or before July 12, 1945. On that date, they submitted to the architect a "final estimate", whereby, having, as they said, completed the building, they claimed to be entitled to receive a balance of $33,934.02, computed as follows:

| "Contract for construction of addition to warehouse | 47,403.00 |
| Plus additional work | 1,531.02 |
| | 48,934.02 |
| Less previous payment | 15,000.00 |
| Balance due | $33,934.02" |

A statement of the details of the claimed additional work was appended.

On July 18, 1945, the architect certified to the owner that a payment of $25,292.55 was due the contractors "under terms of the contract", as follows:

| 85% of Contract ($47,403.00) | $40,292.55 |
| Less payment of $15,000.00 5/18/45 | 15,000.00 |
| Due | $25,292.55 |

The amount of the above-mentioned certificate was paid by the owner to the contractors, $20,000 on July 19, 1945, and $5,292.55 on August 14, 1945. This left, according to the contractors' figures, an unpaid balance of $8,641.47 upon the contract price and amount claimed for additional work.

On August 10, 1945, the contractors wrote the architect stating that they would appreciate his "issuing the final voucher for the job at Milton", so that they might obtain final payment without further delay. On October 30, 1945, the contractors sent the owner a letter as follows:

"We have sent invoices to you two or three times, and also to Mr. Morgan [the architect] and I called Mr. Morgan several times the latest was last Wednesday, and he said that he would take the matter up and make out a statement for us the next day. However, we have not heard from him and hope that you will take care of this for us as soon as possible as we would like to have the job closed out."

On November 16, 1945, the contractors wrote the architect as follows:

"Please advise us when we will receive our final payment from the Blue Mountain Prune Growers Cooperation as you have promised us several times that you would make up our final certificates."

The evidence shows that Mr. E. Halvorson, one of the plaintiffs, in the intervals between correspondence, talked by telephone with Mr. Morgan, the architect, two or three times, and with Mr. C. C. Yates, manager for the owner, several times. His talks with Mr. Morgan were for the purpose of urging him to issue the final certificate. Mr. Halvorson testified, in part: "When I called Mr. Yates, he told me he was waiting

for Mr. Morgan to give him the certificate." Mr. Yates testified, in part: "In each case Mr. Halvorson called and asked when we would get the final certificate from the architect, Mr. Morgan, and when he could get his money. In each case I reminded him I couldn't issue a check only on the basis of the architect's certificate; that I was in touch with Mr. Morgan regarding the certificate and while I couldn't say when Mr. Morgan would get the certificate out, I would give him all the help in my power to get it out."

On November 24, 1945, the contractors wrote the owner as follows:

"We are somewhat surprised to find that we do not receive any replies to our letters and telephone calls in regard to receiving final payment on the building we built for you. Even though you look to Mr. Morgan for a certificate we had a contract with you and therefore we believe you should at least answer our letters and advise us when we may receive payment. We did our utmost in getting the job done for you and we did not anticipate that final payment would be dragged out as long as this and can see no reason for it.

"We trust we will receive our check without any further delay."

Under date of November 30, 1945, the architect issued to the owner his final certificate. The certificate is based upon the contract price plus the amount claimed by the contractors for additional labor and materials, but against this the architect made certain surcharges, leaving a net balance of $4,873.79 owing to the contractors by the owner. The principal item so surcharged was a $3,000 penalty, "per contract", for thirty days' delay in completion of the building. Other items were: For omitting "sacking", $500; for

"tack nailing" certain floors, instead of nailing tight, $140; for tools belonging to owner and taken away by contractors, $95; for work performed after contractors left the job, $132.79.

On November 30, 1945, the owner mailed to the contractors its check in the sum of $4,873.79, as and for payment of the balance due under the architect's final certificate, which check the contractors refused to accept.

Thereafter, the contractors instituted this action. The cause of action, as set forth in the amended complaint, is account stated in the sum of $8,641.47. It is based upon the contractors' "final estimate" of July 12, 1945, as an account rendered, which is alleged to have become an account stated by having been held by the owner without objection until December 6, 1945. The owner answered the amended complaint by general denial. For affirmative defense, it pleaded the contract between the parties, and particularly that part thereof which provided that payments were to be made to the contractors in amounts as determined by the architect and authorized by certificate from him. It recited the issuance of the architect's final certificate, the tender to the contractors of the amount thereof, and their refusal of such tender. It alleged that the architect did not, at any time between July 12, 1945, and November 30, 1945, certify any payment to be made by the owner to the contractors. The reply to the affirmative defense was a general denial, coupled with affirmative allegations to the effect that the only dispute between the parties is with regard to the "charges or credits claimed by" the owner. Specifically, it was alleged that the item of $500 for omitting sacking was excessive and arbitrary; that the item of $3,000 for delay in

completing the building was arbitrary, fraudulent, and unfounded; that the other items of charge were unfounded; and that all of the items of charge were made without consultation with the contractors or affording them a hearing. Replying further, the contractors alleged that, during the course of the performance of the contract, it was agreed between the owner and the contractors that, if the latter completed the first floor of the building by June 1st, no penalty would be exacted by the owner on account of any delay in the performance of the contract; and that the contractors did complete said first floor by June 1st.

■ The cause was tried by the court and a jury. The defendant owner, at the appropriate times, moved respectively for judgment of involuntary nonsuit against plaintiffs, and for a directed verdict in defendant's favor. Each motion was denied. The jury returned a verdict in favor of the contractors in the sum of $8,641.47, and judgment was entered accordingly. The defendant owner appeals, assigning as error the trial court's refusal to allow its motions for involuntary nonsuit and for directed verdict.

"An account stated is an agreement between persons who have had previous transactions of a monetary character fixing the amount due in respect to such transactions and promising payment." *Steinmetz v. Grennon,* 106 Or. 625, 634, 212 P. 532.

The contractors' "final estimate", although in form a statement of account against the owner, was submitted to the architect for the purpose of having him examine it and issue his certificate for payment.

■ The assent of a debtor to an account stated may be implied from his retention of the account, without objection, for more than a reasonable time. Williston,

Contracts, Rev. Ed., section 1863; Restatement, Contracts, section 422(2). What is a reasonable time depends upon the circumstances of the case, including the nature of the transaction, the relationship of the parties, and the usual course of their business. 1 C. J., Accounts and Accounting, section 286; 1 C. J. S., Account Stated, section 40; 1 Am. Jur., Accounts and Accounting, section 28.

■ The owner maintains that no implication of account stated arises when the relationship of the parties is governed by the terms of a special contract. By "special contract", in this connection, we assume is meant an express contract, out of the performance of which the account arose. In such case, if the account is at variance with the terms of the contract, its receipt and retention by the debtor without objection raises no implication of assent by such debtor to its correctness. *Blanck v. Pioneer Mining Co.,* 93 Wash. 26, 159 P. 1077; *Valley Lumber Co. v. Smith,* 71 Wis. 304, 37 N. W. 412; *Newburger-Morris Co. v. Talcott,* 158 N. Y. S. 785.

■ The contractors contend that an account stated may be based on a specialty contract, combined with other items based on simple contract. Their theory, apparently, is that the contract was a specialty, and that there was a separate agreement, of the character of a simple contract, governing the additional work and materials. The fact is, however, that the unsealed contract herein was in no sense a specialty. It was, rather, an informal, simple, or parol contract in writing. Williston, Contracts, Rev. Ed., section 12; Restatement, Contracts, sections 11 and 7.

As stated above, payment of the contract price was to be made by monthly installments, on architect's certificates. Other provisions of the contract with

reference to the authority of the architect are the following:

"The Architect shall, without recourse define the true intent and meaning of the drawings and specifications.

\* \* \*

"The Architect is under no obligation to give the Contractor immediate notice of rejection of faulty work, or in any way relieve the Contractor from responsibility of neglect or carelessness by him or his subordinates.

\* \* \*

"All workmanship shall be executed in neat, mechanical, workmanlike manner by workmen skilled in their respective trades.

\* \* \*

"The value of all alterations to the work shall be determined by estimate and acceptance in lump sum before the change or alteration is made. The contract sum shall be changed accordingly. In event an agreement cannot be arrived at for a lump sum, the Owner may order the changes to be made and the Architect will compute the proper value of same according to the Contractor's cost schedule herein provided, and shall issue certificates accordingly.

\* \* \*

"When it is not expedient to correct injured work or work not done in accordance with the contract, the Owner may deduct from the contract sum the difference in values between work so performed and as called for by the documents, together with full allowance for damage. The sum to be deducted shall be determined by the Architect.

\* \* \*

"No certificate given nor payment made nor partial or entire occupancy of the building by the Owner, shall be constructed [sic] as an acceptance of defective work or improper materials or as con-

doning any omissions. No payment of certificates final or otherwise, shall be construed as relieving the Contractor from any specific obligation he may have assumed under this contract.

\* \* \*

"Payments shall be made to the Contractor in accordance with the terms of the Agreement in amounts determined by the Architect and authorized by certificate from him.

"Within 5 days after the execution of the contract the Contractor shall submit to the Architect for his approval a breakdown schedule of costs of the various items of the work, to be used as data in determining the amounts of payments."

■ It is contended that the provisions of the contract, whereby payments were to be made to the contractors in amounts determined by the architect and authorized by certificate from him, constituted the architect the sole judge and arbiter as to the amount and due date of such payments. *Gilmore v. Courtney,* 158 Ill. 432, 41 N. E. 1023, 1025; *Hebert v. Dewey,* 191 Mass. 403, 77 N. E. 822, 824; *Loftus v. Jorjorian,* 194 Mass. 165, 80 N. E. 235, 236; *Sisters of Charity v. Smith,* N. J., 46 A. 598, 600; Anno., 54 A. L. R. 1261. The contract provisions referred to, however, do not specifically make the architect's determinations in these respects final and conclusive upon the parties. That being so, they do not have the effect of finality and conclusiveness. *Williams v. Mt. Hood Ry. & Power Co.,* 57 Or. 251, 257, 110 P. 490, 111 P. 17, Ann. Cas. 1913A, 177.

■ Again, it is asserted that the contractual provisions respecting the authority of the architect had the effect of making him sole arbiter between the parties, and that, in the absence of fraud or mistake, they are bound by his decisions. *Omaha v. Hammond,* 94 U. S. 98, 24 L. Ed. 70; *Dingley v. Greene,* 54 Cal. 333; *Central*

*Military Tract Railroad Co. v. Spurck,* 24 Ill. 587, 590; Anno., 54 A. L. R. 1260. The only respect, however, in which the contract appears to make the architect's decisions final is in the provision that the architect shall, "without recourse", define the true intent and meaning of the drawings and specifications. "Without recourse" is a technical expression used as a form of qualified indorsement of a bill of exchange or promissory note. From its context, we are of the opinion that it was used in the contract under consideration as meaning "with finality" or "conclusively".

■ In other respects, the architect was authorized to compute the proper value of alterations or changes in the work in the event that the parties could not agree upon such value, and to determine the amounts to be deducted from the contract price for defective work. As to these matters, his authority, under the contract, was to ascertain certain facts, and not to determine ultimate legal liability. An agreement giving that type of authority to an architect is to be classified as a limited arbitration agreement or limited appraisal agreement. Williston, Contracts, Rev. Ed., section 1921 A; *Rueda v. Union Pacific Railroad Co.,* 180 Or. 133, 139, 175 P. 2d 778. The decisions of the architect under a limited arbitration agreement are not conclusive, unless the parties, in plain and unequivocal language, have made them so, which, as we have said, they have not done in the present instance. *Williams v. Mt. Hood Ry. & Power Co.,* supra (57 Or. 251, 257, 110 P. 490, 111 P. 17, Ann. Cas. 1913 A, 177); *Spokane County v. Pacific Bridge Co.,* 106 Or. 550, 559, 213 P. 151; *Lovell et al. v. Potts et al.,* 112 Or. 538, 553, 207 P. 1006, 226 P. 1111.

■ It was competent for the owner to plead such limited arbitration agreement as a bar to the action on

account stated. *Rueda v. Union Pacific Railroad Co.,* supra (180 Or. 133, 141, 175 P. 2d 778).

■ It is suggested by the contractors that there is nothing in the contract to indicate that any final certificate, as such, was required. In other words, their contention is that they were entitled to receive final payment on or before the tenth day of the month following completion of the work. It is true that the contract makes no distinction between the manner of issuance of interim and final certificates, but the parties themselves placed a practical construction upon the contract in that respect. Mr. E. Halvorson testified that the final estimate or statement was submitted to the architect for the purpose of having him pass upon the figures and on the job as a whole. This was done on July 10, 1945, and on November 10, 1945, the contractors were still waiting for and demanding the architect's certificate. In the interim, they had sought to bring about the issuance of the final certificate through letters to and telephone communications with both the architect and the owner. It seems obvious that both parties construed the contract as requiring the issuance of the final certificate as a condition precedent to enforcement of the owner's liability for the unpaid balance of the contract price. It is objected, in this connection, that the trial court was not requested to interpret the contract, and that it did not do so. We think, however, that, in determining the owner's motion for directed verdict, the court necessarily construed the contract. We think, moreover, that, in so doing, he should have taken into consideration the practical construction placed thereon by the parties. *Rueda v. Union Pacific Railroad Co.,* supra (180 Or. 133, 138, 175 P. 2d 778); *Spande v. Western Life Ind. Co.,* 68 Or. 171, 188, 136 P. 1189;

*Kontz v. John Furniture Corp.*, 167 Or. 187, 203, 115 P. 2d 319.

 The provision of the contract, to the effect that payments should be made in amounts determined by the architect and authorized by certificate from him, does not in terms, or "by fair implication from the nature or language of the agreement", make it the owner's duty to procure such certificate. That duty, in such cases, rests upon the contractor. 9 C. J., Building and Construction Contracts, section 105; 9 Am. Jur., Building and Construction Contracts, section 34. The contractors cite 9 C. J., Building and Construction Contracts, section 105, and cases under note 48, to the effect that where, by the terms of the contract, the architect's decision or estimate is to be made solely for the benefit of the owner, the duty of procuring such decision or estimate is not upon the builder. But such were not the terms of this contract.

 Account stated was one of the common counts in general assumpsit. 4 Am. Jur., Assumpsit, section 5. Where the right to recover upon a building contract depends upon the procurement of an architect's certificate, the builder, upon substantial performance of the contract, must sue upon the contract, and it is error to permit him to recover upon the common counts. In the event that he is unable to procure the certificate, he must still sue upon the contract, alleging in his complaint his excuse for not complying with the contract in that regard. *Hart v. Carsley Mfg. Co.*, 221 Ill. 444, 77 N. E. 897, 112 Am. St. Rep. 189, 5 Ann. Cas. 720; *Williams v. Chicago, S. F. & C. Ry. Co.*, 112 Mo. 463, 20 S. W. 631, 637, 638, 34 Am. St. Rep. 403; *Johnson v. Prineville*, 100 Or. 105, 115, 196 P. 817; 9 Am. Jur., Building and Construction Contracts, section 118, text and note 13.

■ The contractors argue that, the contract having been fully performed, and nothing having remained to be done but the payment of the money, recovery, at plaintiffs' election, might be had in general assumpsit. *Sharp v. McCargar,* 114 Or. 435, 441, 236 P. 262; *Concord Apartment House Co. v. O'Brien,* 228 Ill. 360, 369; *Boyce v. E. M. F. P. Co.,* 136 Ill. App. 352, 355; 4 Am. Jur., Assumpsit, section 7, text and note 4. In the case at bar, however, the procurement of the architect's certificate was a condition precedent, and, failing performance of such condition, it cannot be said that the contract was fully performed. In the Concord Apartment House Co. case, supra (228 Ill. 360) the architect's certificate actually had been given, but had been lost. The court held that the fact that the certificate actually had been issued distinguished the case from *Hart v. Carsley Mfg. Co.,* supra (221 Ill. 444, 77 N. E. 897). In the Boyce case, supra (136 Ill. App. 352) the court held that, while the contractor was bound to procure the architect's certificate, or to show a good excuse for not procuring it, because such certificate was the evidence of completion of the work and a substantial provision of the contract, nevertheless, as the evidence showed that procurement of the certificate had been waived by the owner, it was not error to permit a recovery under the common counts. The proof was that the architect had severed his connections with the owner, and that the latter had made several payments to the contractor without requiring any certificate.

■ Of course, the requirement of an architect's certificate, being for the benefit of the owner, may be waived by him. *McInnis v. Buchanan,* 53 Or. 533, 538, 99 P. 929, cited by the contractors in this connection,

is to be distinguished from the case at bar, in that the court there held that the pleadings and proof showed a waiver of the presentation of the architect's certificate. In *Perry v. Hunt*, 62 Or. 256, 125 P. 295, also cited by the contractors, the court held that there was no evidence that an oral agreement sued on required the procurement of an engineer's estimate of the quantity of solid rock broken down and removed by plaintiff, as a condition precedent to payment of the contract price therefor.

■ The questions of whether or not the delay on the part of the architect in issuing the certificate in this case was unreasonable, and amounted to a refusal to issue it; whether or not, before surcharging the contractor's account, he should have afforded the parties a hearing thereon; whether or not the penalty clause for delay in completing the building was enforceable; and whether or not certain deductions for various reasons were properly made by the architect, while discussed in the briefs, are not properly before us for decision. It is to be remembered that the action is upon account stated. The owner pleaded the contracts only as a defense to such action. The defense was competent. No waiver of the contract provision of procurement of the architect's certificate was pleaded, nor was procurement thereof pleaded or proved. Under those circumstances, the questions above mentioned were immaterial in the present case.

The owner seeks to make the point that the architect's certificate was in the nature of an executed award, conclusive upon the rights of the parties. That, also, under the pleadings and proof, is a matter immaterial to the case at bar.

■ The evidence herein repels any idea that the owner assented to the accuracy of the contractor's final

estimate or statement. On the contrary, the uncontradicted evidence is that the statement was submitted by the contractors to the architect for his approval, and that both parties understood that the owner would not be liable thereon until the architect's certificate was issued. The evidence shows, further, that the owner specifically expressed its lack of assent to the accuracy of the statement, by its manager's insistence to the contractors that a check for the balance would be issued only on the basis of the architect's certificate. There was certainly no basis for any conclusion that the owner understood that the statement was a final adjustment of the respective demands between them. *O'Neill v. Eberhard Co.,* 99 Or. 686, 695, 196 P. 391. The contractors, having laid the action upon account stated, were bound, in order to recover, to prove an account stated, and were entitled to recover upon that and not upon anything else. *Vanbebber v. Plunkett,* 26 Or. 562, 567, 38 P. 707, 27 L. R. A. 811. We are of the opinion that they failed in their proof.

In our judgment, the trial court erred in denying defendant owner's motion for a directed verdict in its favor. The judgment is reversed, with costs, and the cause is remanded with directions to enter a judgment of dismissal.

Page, J., did not participate in this decision.

PETITION FOR REHEARING

Before LUSK, Chief Justice, and BRAND, BAILEY and HAY, Justices.

LUSK, C. J.

The respondents have petitioned for a rehearing upon six stated grounds as follows:

"(1) The Court is in error in holding that (page 10 of the opinion) where the right to recover on a building contract depends upon the procurement of an archcitect's certificate, the builder, upon substantial performance of the contract, must sue upon the contract, and it is error to permit him to recover upon the common counts.

"(2) The Court is in error in holding that there was a practical construction placed upon the contract by the parties which required the architect's certificate for final payment.

"(3) The Court is in error in holding that there was no waiver of the contract provision of the procurement of the architect's certificate pleaded nor the procurement thereof pleaded or proven.

"(4) The Court is in error in holding that the evidence herein repels any idea that the owner assented to the accuracy of the contractor's final estimate or statement.

"(5) The Court is in error in holding that both parties understood that the owner would not be liable until the architect's certificate was issued.

"(6) The Court is in error in holding that the owner specifically expressed its lack of assent to the accuracy of the statement by its manager's insistence to the contractor that a check for the balance would be issued only on the basis of the architect's certificate."

Grounds (1) and (3) relate to statements in our former opinion which need not at this time be further considered because they were unnecessary to the decision of the case. The action was not upon the contract; on the contrary, the plaintiffs, ignoring the contract, sued upon an account stated. The contract entered into the case only because the defendant pleaded and relied upon it, and because the proof showed without contradiction that the parties understood the contract to mean that no liability of the defendant would arise until the architect's certificate should be issued. That being so, there was no room for an implication of assent by the defendant to the correctness of the statement rendered by the plaintiffs based upon the defendant's failure to object to that statement. That is the gist of the decision as set forth more fully in the next to the last paragraph of the opinion (214 P. (2d) 993). We have re-examined the case in the light of Grounds (2), (4), (5) and (6) of the petition for rehearing and find no adequate reason for changing our decision.

The discussion in the former opinion of questions not germane to the only issue in the case was brought about by argument on those questions in the briefs of counsel. It seems to be the fear of counsel for the plaintiffs that some of the statements made in the course of that discussion may have the effect of barring

them from obtaining relief in some other type of proceeding for the enforcement of their claim. Nothing of this sort was intended, nor could any of these statements have that effect. We could, of course, decide only the case before us. Dicta do not bind either the Court or the parties, and whether anything said obiter in the former opinion shall require modification may be left to some future time when the questions shall arise upon the record.

The petition for rehearing is denied.