Argued April 5, affirmed May 23, 1916.

## CARLON v. FIRST NAT. BANK.*

(157 Pac. 809.)

**Banks and Banking—National Bank Examiner—"Officer of Bank."**

1. A national bank examiner is not an agent or officer of a bank which he examined.

**Estoppel—Persons to Whom Estoppel is Available.**

2. As only those to whom the representation is made or their privies can take advantage of an estoppel by conduct, representation by a depositor in a bank to a national bank examiner cannot avail the bank which he was examining.

**Estoppel—Fraud of Party Claiming Estoppel.**

3. A certificate of a bank depositor, even if intended to be shown the bank, cannot avail it as an estoppel, having been obtained by fraud of its president.

**Banks and Banking—Withdrawal by Bank President on Memorandum Check—Effect on Depositor's Account.**

4. The money fraudulently withdrawn from a bank on a memorandum check, bearing the name of a depositor, signed by the bank president, was that of the bank, and not of the depositor.

**Account Stated—Surcharging and Falsifying.**

5. An account stated may be surcharged and impeached for fraud, error or mistake.

[As to the law of account stated, see note in 136 Am. St. Rep. 37.]

**Account Stated—Failure to Object.**

6. Unless a debtor objects in a reasonable time to an account presented, it will be considered as stated.

**Account Stated—Question for Court or Jury.**

7. If the facts be clear or undisputed, the court should declare whether an account was stated, but, if not, the disputed facts and the question of whether the delay in objecting was reasonable should be left to the jury.

**Account Stated—Burden of Proof.**

8. The burden of proving an account stated is on the party setting it up.

**Account Stated—Implied Acquiescence—Effect.**

9. Where an account is rendered and retained without timely objections, the implied acquiescence is only *prima facie* sufficient evidence of the debt shown by it.

---

*As to what constitutes an account stated, see note in 27 L. R. A. 811. And as to effect of retaining account to render it an account stated, see note in 29 L. R. A. (N. S.) 334.          REPORTER.

Account Stated—Question for Jury.

10. Under the facts shown in an action against a bank for an alleged balance of deposit, *held* that whether an account had become stated by retention by the depositor without objection was a question for the jury.

From Douglas: JAMES W. HAMILTON, Judge.

In Banc.    Statement by MR. JUSTICE McBRIDE.

This is an action by William J. Carlon against the First National Bank of Roseburg, Oregon, a corporation, to recover the sum of $1,350, which the complainant claims as the balance of a deposit made by him in the defendant bank.

The answer, after a general denial, sets up the following defenses:

That plaintiff loaned T. R. Sheridan, the president of the bank, the sum of $1,500, and authorized him to withdraw that amount from his deposit in the defendant bank, and that, pursuant to said authority, the same was withdrawn by Sheridan by means of a memorandum check signed for the plaintiff by Sheridan. That the defendant pleads by way of estoppel that at a time when the defendant bank was being consolidated with the Douglas National Bank of Roseburg, R. W. Goodhart, a national bank examiner detailed to examine the affairs of the defendant and to assist in and supervise the transfer of its interests to the Douglas National Bank, and for the purpose of protecting stockholders, depositors and creditors of the defendant, addressed to plaintiff the following letter:

"Roseburg, Oregon, June 20, 1911.
"Mr. W. J. Carlon, Roseburg, Or.

"Dear Sir: The records of this bank showed, at a recent examination, that certain charges had been made in your account by President Sheridan. In other words, part of your deposit had been withdrawn and loaned by him. Mr. Sheridan states that you authorized him to withdraw these funds and invest them for

you. If this is so, you will kindly sign the certificate at the bottom of this letter and return in the inclosed addressed envelope. Mr. Sheridan informs me that he has withdrawn the following sums which he loaned to the parties mentioned below: $1,500 loaned to T. R. Sheridan.                    Yours respectfully,
"R. W. GOODHART,
"National Bank Examiner."

That thereupon plaintiff signed the certificate referred to, which is as follows:

"I hereby certify that any sums withdrawn by Mr. T. R. Sheridan from my balance on deposit with the First National Bank of Roseburg, Oregon, were duly authorized by me, and the First National Bank is relieved from all liability relative to the same.
"W. J. CARLON."

That Sheridan delivered to plaintiff his notes for the money so borrowed, and plaintiff accepted them, and has ever since retained possession of them, and has made repeated attempts to collect them. That plaintiff never at any time demanded payment of the sum alleged in the complaint until more than three years after defendant had ceased to transact business. That at the time said letter was written and addressed to the plaintiff Sheridan was the owner of a large amount of property unencumbered, and that defendant could and would have protected itself from loss by reason of the withdrawal of plaintiff's funds from the bank if plaintiff had repudiated Sheridan's acts in the premises. That defendant relied upon the certificate signed by plaintiff, and took no steps to protect itself. That Sheridan's property has since been attached by creditors, and he has become bankrupt, and that plaintiff should be estopped from urging his claim under the circumstances. There was also a plea of account stated.

The reply of plaintiff admitted the reception of Goodhart's letter and that plaintiff signed the statement requested, but alleged that he signed upon the request of Sheridan, who fraudulently represented to him that he was the owner of a large amount of property in excess of what he owed, and was entirely solvent and able to pay his debts, and that plaintiff could draw his money at any time on a few days' notice, and that by these false representations, which are set out with great detail in the reply, plaintiff was induced to sign the certificate, and without any consideration whatever was induced to accept the worthless notes of Sheridan for the amount of his deposit; that all the representations were false, and were made with the intent to deceive plaintiff and did deceive him. The reply contained similar allegations in regard to an account stated. A motion to strike out certain portions of the reply and a demurrer having been overruled, there was a jury trial, and verdict and judgment for plaintiff, from which defendant appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Oliver P. Coshow.*

For respondent there was a brief over the names of *Mr. George J. Perkins* and *Mr. Carl E. Wimberly,* with an oral argument by *Mr. Perkins.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1-3. Unless there was some error committed by the court during the progress of the trial, we must assume after verdict that the testimony introduced by plaintiff is true, and this testimony presents the following state of facts: Plaintiff deposited his money in the

bank, and Sheridan, the president and active manager of the bank, drew it out without authority and converted it to his own use. The transaction not being satisfactory to the United States bank examiner, he addressed the letter quoted in the statement to plaintiff, whereupon plaintiff consulted Sheridan, who, by falsely representing his own financial ability, induced plaintiff to sign the certificate sent him by the bank examiner and to return it to that official. The bank was doing business at the time, and Sheridan was still its president. The statement was not made to the bank or any officer of the bank, but to an outside party, and plaintiff was induced to sign it by the representations of the president of the bank. A national bank examiner is in no sense an agent or officer of the bank he examines. He can bind it in no way and can contract for it in no way. In the present instance the examiner did not profess to make the inquiry on behalf of the bank or any of its officers, and it is one of the elementary rules of law of estoppel by conduct that only those to whom the representation is made or their privies can take advantage of it: Bigelow on Estoppel (5 ed.), p. 27; *Jorden* v. *Money,* 5 H. L. Cas. 185; *Hosegood* v. *Bull,* 36 L. T. (N. S.) 620; *Kinney* v. *Whiton,* 44 Conn. 262 (26 Am. Rep. 462). In *Jorden* v. *Money,* 5 H. L. Cas. 185, the Lord Chancellor observes:

"It will not do if he merely said something, supposing it to be quite right, and then that some stranger having heard and acted upon it should afterwards come to him to make it good."

And in *Hosegood* v. *Bull,* 36 L. T. (N. S.) 620, CLEASBY, J., remarks:

"When A asks B his opinion in confidence respecting the solvency of C, and the question is answered by B

without any intimation having been given to him that the information was sought for the purpose of its being communicated by A to any particular individual, I cannot help thinking that the case does not come within any class of cases in which relief on the ground of misrepresentation can be obtained against B by the individual to whom the information has been communicated by A."

There was nothing in the letter written by the bank examiner to plaintiff to indicate that he intended to make an ambulatory use of the information requested by him from the plaintiff, and, considering the secrecy with which examinations of national banks are usually carried on, the plaintiff would have reasonable cause to suppose that his communication was intended for the use of the examiner, and not for the bank. While the certificate signed by plaintiff is of high evidentiary value as an admission against interest, it is not technically an estoppel. However, if we should concede that it was intended to be shown to the officers of the bank for their information, it would not amount to an estoppel if the signature of the plaintiff was procured by false representations and deceit on the part of the president of the bank or by means of like representations by any other person.

"The representation must have been a free voluntary act; and, if obtained by the party who has acted upon it, it must have been obtained without artifice. If it has been procured by duress or by fraud, there will be no estoppel upon the party making it, it would seem, though he made it with the full intention that it should be acted upon; indeed, it is said that, where the conduct supposed to have created an estoppel was brought about or directly encouraged by the party alleging the estoppel, no estoppel is created. But that must probably be understood of something in the way of artifice or other questionable endeavor. In *Wilcox* v. *Howell,* before cited, an action was

brought to foreclose a mortgage executed by the defendant to one Picard and by him assigned to the plaintiff. It was proved that the mortgage had been procured by fraud; but it also appeared that the defendant had given a certificate, which was delivered to the plaintiff with the mortgage, that the security had been given 'for a good and valid consideration to the full amount thereof, and that the same was subject to no offset or defense whatever.' It appeared, however, that this certificate had also been procured by the mortgagee by fraud, and that it was not given to induce the plaintiff to buy the mortgage or to enable the mortgagee to negotiate it; on the contrary, it was given with the understanding that he should not negotiate it. The court held the defendant entitled to deny the representation made in the certificate'': Bigelow on Estoppel, p. 583.

4–10. We will now consider the defense of account stated interposed by defendant.

The plaintiff deposited in the defendant bank, subject to withdrawal upon his order, the money claimed in this action. This amount then became a debt due plaintiff from defendant. Plaintiff had no right to or claim upon any particular fund of the bank. Therefore, when T. R. Sheridan, president and practically the sole managing officer of the bank, embezzled the money in question, he appropriated the money of the bank, and not of plaintiff. It is conceded that the amount deposited by plaintiff and not withdrawn upon his order was a debt due from the defendant to the plaintiff, and the burden was upon the defendant to show that such sum had been paid to the plaintiff or authorized by him to be withdrawn from the bank. Defendant pleads what tends to show and by a very liberal construction may, perhaps, be termed an account stated. The following is the plea:

"That on or about the 17th day of June, 1911, the defendant rendered to the plaintiff an account showing

the balance due the plaintiff from the defendant; that the plaintiff received said statement of account, and never objected thereto, but acquiesced therein, and said account has become and is an account stated; that said account so stated to the plaintiff by the defendant showed a balance due and owing from the defendant to the plaintiff of the sum of $50, and no more.''

Turning to the original record, which is not set forth in the printed abstract in full, we find the reply challenges the pleading of an account stated in substantially the following manner:

''Plaintiff for reply to defendant's third further and separate answer denies that on or about the 17th day of June, 1911, the defendant rendered to the plaintiff an account showing the balance due the plaintiff with the defendant except as hereinafter alleged; denies that the plaintiff received said statement of account and that he never objected thereto, but that he acquiesced therein, except as hereinafter alleged, and denies that said account has become and is an account stated; denies that said account so alleged to have been stated to the plaintiff by the defendant showed a balance due and owing from the defendant to the plaintiff of the sum of $50, and no more.''

Plaintiff then affirmatively avers to the effect:

That T. R. Sheridan in his official capacity, and with the knowledge of the defendant, ''as president of said defendant bank, for the purpose of securing a release of the defendant from liability on account of plaintiff's deposit, and for the purpose of deceiving and defrauding the plaintiff, falsely and fraudulently represented to the plaintiff that he, the said T. R. Sheridan, was the owner of a large volume of property, and was worth $3 for every dollar that he owed, and further falsely and fraudulently represented to the plaintiff that he could draw said money upon a few days' notice at any time.''

There is a further recital of facts showing the falsity of the representations and asserting:

That plaintiff was thereby fraudulently lulled into a sense of security, and that he did not learn of the falsity of such representations until "about the 7th day of November, 1913; that the failure of the plaintiff to demand payment of said deposit and his failure to object to any statements of his said accounts, if any he received and his apparent acquiescence in said statements, if any he received, were all on account of his belief in and reliance upon said false and fraudulent representations aforesaid, and not otherwise."

Under substantially this state of the pleadings defendant demurred to the reply, which being overruled, it moved the court for judgment on the pleadings, which was denied. This is the only error assigned covering the matter of account stated that we can find in the record. A search through the brief of the learned counsel for defendant is made in vain to find the matter discussed or any authorities touching the point. Rule 10 (117 Pac. x) of this court requires:

"The printed brief shall state the several propositions of law claimed to be involved in the case and the authorities relied upon for the support of the same separately from the argument. The points and authorities must be first distinctly stated and the argument set forth supplementary thereto."

If the answer is taken as sufficient to plead an account stated, then it seems the reply, construed in the same manner as the answer, fairly raises an issue as to whether the account rendered by defendant to plaintiff became stated. The important question here is: Was the question properly submitted to the jury, or should the court have passed upon it as a matter of law? An account stated may be surcharged and impeached for fraud, error or mistake: *Howell* v. *Johnson*, 38 Or. 571 (64 Pac. 659); *Ault* v. *Interstate Sav. & Loan Assn.*, 15 Wash. 627 (47 Pac. 13); 1 R. C. L., p. 220, § 20. Unless a debtor objects within a reason-

able time to an account presented, it will be considered as stated. If the facts are clear or undisputed, the court should declare the account to be stated; if otherwise, the disputed facts and the question whether the delay in objecting was reasonable should be left to the jury under proper instructions: *Howell* v. *Johnson,* 38 Or. 571 (64 Pac. 659). The burden of proof that the account was stated was upon the defendant, who set it up. Where an account is rendered and retained without timely objections, the implied acquiescence is only *prima facie* sufficient evidence of the debt shown by the account: 1 R. C. L., p. 220, § 20. We therefore fail to see how under the conditions of this record the court can say as a matter of law that the account in question was stated or agreed to. It was properly a question to be passed upon by the jury: 1 R. C. L., p. 211, § 9. It has been held that, where the mere retention of an account without objection furnishes evidence admissible as tending to show acquiescence in the correctness of the account, whether silence under the particular circumstances amounts to an admission of correctness and whether the delay was unreasonable are questions of fact for the jury: 1 C. J., p. 729, § 404. When the facts are disputed or the evidence is not clear, the question is a mixed one of law and fact, and is to be determined by the jury under proper instruction from the court: 1 C. J., p. 730; 1 R. C. L., p. 216, § 15.

Under the facts in the present case, which are either practically conceded or abundantly proved, the defendant seeks to escape liability for the debt admitted by it to have been at one time due the plaintiff by availing itself of the benefit of the fraudulent and illegal scheme and swindle of its president and general manager, T. R. Sheridan, which was concocted by him

while clothed with authority of the bank and while he was the only person connected with that institution to whom objections in regard to the transaction involved could in the ordinary way be made. This under the law should not be permitted. It is in no way shown that the alleged delay on the part of plaintiff caused the bank any loss. Sheridan evidently was hopelessly insolvent or involved beyond redemption when he drew the money. All the proceedings touching upon the deposit of plaintiff in the bank when he had a right to believe it would be safe were permeated and covered up with the worst kind of fraud. The bank had no authority to deliver the money claimed by plaintiff to T. R. Sheridan, its president, or to any other person than the plaintiff. In *Chapman* v. *First National Bank,* 72 Or. 492 (143 Pac. 630), which is an analogous case, Mr. Justice McNary, speaking for this court, said:

"The money being on deposit at the time of its appropriation by the president, the board of directors, as the 'mind' of the corporation, having a general superintendency over and the management of the business affairs and transactions of the bank, was bound to know of the relation existing between plaintiff and defendant and the incidental duties flowing therefrom. So defendant, in honoring the memorandum check bearing the name of plaintiff as signed by Sheridan, president of the bank, made the act of the president the act of itself."

So in the present case, in order for the bank to benefit by the fraudulent scheme of its president, it must adopt and make its own the fraud perpetrated upon the plaintiff. The trial judge submitted the matter of the account stated to the jury, treating the same under the circumstances of this case as a mixed question of law and fact. This, we think, was properly

done. Counsel for defendant requested no special instructions in regard thereto, and we are firmly convinced that the evidence in the case warranted the jury in finding for the plaintiff upon that point.

Other errors are suggested, but we find nothing in them that would probably have changed the result, and the testimony indicates that the verdict was eminently just.

The judgment is affirmed.        AFFIRMED.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE EAKIN absent.