Argued January 10, reversed February 13, objections to cost bill sustained March 13, 1923.

## STEINMETZ *v.* GRENNON.

(212 Pac. 532.)

**Appeal and Error—No Reversal for Refusal to Submit Special Interrogatories Unless Discretion was Abused.**

1. A judgment will not be reversed for the court's failure to submit special interrogatories to the jury where the record shows no evidence of abuse of judicial discretion in such refusal.

**Trial—Involuntary Nonsuit Properly Refused Where There was Evidence to Sustain Verdict for Plaintiff.**

2. An involuntary nonsuit was properly disallowed, where the record contains ample evidence, if believed by the jury, to sustain a verdict and judgment for plaintiff.

**Account Stated—Minds must Meet to Establish "Account Stated."**

3. An account stated, which is an agreement between persons who have had previous transactions of a monetary character fixing the amount due in respect to such transactions and promising payment, cannot exist unless the minds of the parties have met.

---

3. On question of meeting of minds in account stated, see note in 27 L. R. A. (N. S.) 811.

106 Or.—40

**Account Stated—Agreement as to Balance may be Expressed or Implied.**

4. In order to establish an account stated, the parties must agree that the balance struck is correct, but agreement may be expressed or implied from the failure to object to an account rendered by one party to another.

**Account Stated—Promise to Pay Balance Due may be Implied.**

5. A promise to pay the balance due is a necessary element of an account stated, but such promise need not be expressed, but can be implied where the parties agree upon the amount due or their conduct justifies the inference that they have agreed.

**Account Stated—Express Promise is not Necessary for Account Stated at the Termination of Partnership.**

6. To establish an account stated at the termination of a partnership relation, it is not necessary that there be an express promise to pay the amount agreed to be due, even if such promise is necessary to establish an account stated between partners during the continuance of the partnership.

**Account Stated—Complaint Need not Allege Promise to Pay.**

7. A complaint upon an account stated need not allege that the defendant promised to pay, but is sufficient, under the modern rule of pleading, if it alleges enough facts to support a promise implied by law, for legal conclusions need not be alleged.

**Account Stated—Original Basis for Account Ordinarily Need not be Alleged or Proved.**

8. In an action on an account stated, it is not ordinarily necessary to allege or prove the original character of the debt or the items constituting the account, since the action is upon the new promise.

**Account Stated—Must be Based on Previous Transaction of Monetary Character.**

9. An account stated must be based upon previous transaction of a monetary character, since it does not create an original liability but merely determines the amount of the debt where liability previously existed.

**Account Stated—Plaintiff may Show Previous Transaction as Foundation for Settlement.**

10. Where the defendant denied the alleged account stated, thereby requiring the plaintiff to prove it by a preponderance of the evidence, plaintiff was entitled to show the previous transactions between the parties as a foundation for the settlement of the account.

---

4. Rule that receipt of statement of account without protest amounts to admission of its correctness, see note in Ann. Cas. 1915A, 694.

9. Character of the claims which may be the subject of account stated, see notes in 136 Am. St. Rep. 37; 45 L. R. A. (N. S.) 534.

Account Stated—Plaintiff cannot Prove Basis Differing from That Alleged.

11. Where the plaintiff in an action on an account stated alleged the transaction which formed the basis of the account, he cannot prove some other basis.

Account Stated—Refusal of Instruction Denying Recovery if There had been No Partnership Held Error Under the Issues.

12. Where plaintiff alleged that the account stated was a settlement of the balance due under a partnership previously existing between him and defendant, and defendant denied both the partnership and the account stated, and a large part of the evidence of both parties was devoted to the issue of the existence of the partnership, it was error to refuse instructions requested by defendant that plaintiff could not recover if the jury found there had been no partnership.

Account Stated—Defendant may Offer Evidence Showing Inherent Improbability of Agreement.

13. When defendant denies account stated he may show any facts tending to disprove plaintiff's cause of action, including evidence showing the inherent improbability of defendants having agreed to the alleged account.

Account Stated—Bill of Sale Executed by Defendant Subsequent to Statement of Account Held Inadmissible.

14. Where plaintiff claimed an account stated of the balance due in settlement of a partnership between himself and defendant, and defendant denied both the partnership and the account stated, a bill of sale of the property used in the business conducted by the parties executed by defendant alone was not admissible in his behalf, where it was not executed until after the date on which plaintiff claimed the partnership was settled by the account stated.

Account Stated—Evidence Defendant Sold Property as His Own Held Admissible to Disprove Partnership Alleged as a Basis.

15. Where plaintiff claimed an account stated as a settlement of a partnership between himself and defendant, and defendant denied both the account stated and the partnership, it was competent for defendant to show that he sold the business as his own individual property, and that plaintiff did not participate in the negotiations of the sale, since such a showing relates to the question whether the parties were partners.

Account Stated—Exclusion of Evidence Defendant Did not Claim Partnership Alleged as Foundation of Account Held Error.

16. Where plaintiff claimed the account stated was in settlement of a partnership between himself and defendant, and defendant denied the partnership as well as the account, and claimed to have sold the business as his own, it was error, after plaintiff had explained his failure to participate in the negotiations for the sale of the business by relating a conversation with the defendant which defendant denied, to exclude defendant's evidence that he had carried on the negotiations for the sale alone, and that plaintiff at no time demanded to be recognized as a partner.

From Klamath: D. V. KUYKENDALL, Judge.

Department 1.

This is an action brought by William J. Steinmetz against Fred U. Grennon upon an alleged account stated. The verdict of the jury was for the plaintiff. The defendant appealed from the consequent judgment.

The complaint alleges that on January 20, 1919, the plaintiff and defendant entered into a copartnership for the purpose of engaging in the general retail butcher business; that pursuant to such partnership agreement they conducted a general retail butcher-shop in Klamath Falls "up to and including about July 1, 1919, at which time said defendant sold and disposed of said business," and received therefor approximately $22,000; that after paying all the debts of the firm the plaintiff and defendant struck a balance of the net profits, and found, settled and determined the amount to be $7,905.80; that—

"'at said time the plaintiff and defendant then and there settled the amount due and owing the plaintiff from the defendant and it was ascertained by and between the parties, plaintiff and defendant, that there was a balance due and owing the plaintiff from the defendant, of the sum of $3,952.90, which said sum of money the defendant retains and refuses to pay to the plaintiff, although often requested so to do, except the sum of $2,000, leaving a balance due and owing the plaintiff from the defendant of the sum of $1,952.90.'"

The defendant in his second amended answer denies that the parties entered into an agreement of partnership, denies that they conducted a butcher-shop as partners, denies that they struck a balance, and denies the alleged account stated.

The answer contains explanatory affirmative allegations to the effect that on or about January 10, 1919, the plaintiff came to the defendant and proposed to buy into the People's Market, a butcher-shop then conducted by the defendant; that the proposal resulted in an agreement that they should take an inventory of the property, that plaintiff should pay defendant for a one-half interest to be ascertained by taking an inventory, that plaintiff should share equally with the defendant in profits and losses, and that it was further expressly agreed that plaintiff should not become a partner until he "paid in full for one-half part of said inventory"; that pursuant to the agreement the parties "did take a full and complete inventory" on January 10, 1919, and found the total amount to be $14,155.81;

"that thereafter the plaintiff paid this defendant on account, and looking to the consummation of said purchase, the sum of $1,000 and thereafter sold this defendant, the Fach butcher-shop on Main Street in Klamath Falls, Oregon, for the sum of $867.30, total $1,867.30, to be applied on said purchase price. That plaintiff has heretofore paid defendant on said amount of $7,077.81, the sum of $1,867.30 and no more; that it was expressly stipulated and understood and agreed by and between plaintiff and defendant at said time, that plaintiff should not become a partner with said defendant in said business or be given any of the profits thereof until such time as plaintiff had paid defendant the said total sum of $7,077.81"; that after making the alleged agreement and paying $1,867.30 the plaintiff told defendant that he was unable to pay the balance of the purchase price of one-half part of the inventory and said that if defendant. would return the $1,867.30

"the plaintiff would consider himself no longer a partner of defendant's and no longer entitled to

share in the profits or liable to share in the losses of said business. That thereupon this defendant did pay the plaintiff the sum of $2,000 being $137.50 more than the plaintiff had paid into said business. That besides said sum of $2,000 so paid by defendant to plaintiff, as aforesaid, defendant paid the plaintiff a salary of $550 during the five and one-half months that plaintiff worked for defendant and turned over to him, during said period, butcher supplies of the value of $137.50. That defendant owes plaintiff nothing.''

REVERSED.    OBJECTION TO COST BILL SUSTAINED.

For appellant there was a brief and oral argument by *Mr. J. H. Carnahan.*

For respondent there was a brief and oral argument by *Mr. W. H. A. Renner.*

HARRIS, J.—A better understanding of the controversy may be had if the outstanding admitted facts are first related. The defendant had been conducting in Klamath Falls a butcher-shop known as the People's Market. The plaintiff had been conducting a butcher-shop sometimes designated in the record as the Hawxhurst Market and at other times referred to as the Fach Market. It is conceded that at some time before or about February 8, 1919, the parties entered into an agreement, but the plaintiff and defendant differ sharply as to the terms of the agreement. Pursuant to the agreement, whatever it was, Steinmetz paid Grennon $1,000 in cash and turned over the Hawxhurst Market and for it was allowed $867.30, making a total of $1,867.30 paid to Grennon. The plaintiff worked in the People's Market until about July 20, 1919, when the business was sold to George W. Bratton and Frank Whiteman, who immediately took possession. During the period

when Steinmetz worked in the People's Market he received $25 per week together with whatever meats were used by his family. Grennon did the banking for the People's Market and he wrote the checks. On August 29, 1919, Grennon paid Steinmetz $2,000.

Stated briefly the story related by the plaintiff and his witnesses is as follows: The defendant was not feeling well and wanted a partner who would take a personal interest in the business and thus relieve him of some of the responsibility, and this wish was the dominating factor with him. Grennon proposed to Steinmetz that the latter become a partner; and when Grennon was told that Steinmetz did not have enough money to pay for a one-half interest Grennon said that he did not care much about that because his principal object was to secure relief by obtaining a partner who would give personal attention to the business and share the responsibility. After some negotiations the parties entered into an oral agreement of partnership. An inventory was taken on February 8, 1919, and the value of the People's Market was fixed at $14,155.81. Steinmetz paid $1,867.30 on his half, and at once became a partner of Grennon and a debtor to him for the remainder of one half of the inventory. Grennon and Steinmetz conducted the People's Market until July 20, 1919, when the shop was sold to Bratton and Whiteman. After the sale Grennon paid the partnership debts from time to time until they were all satisfied. At some time in August, 1919, after the partnership bills had been paid, Steinmetz and Grennon settled their partnership accounts and after making allowance for the unpaid balance due from Steinmetz to Grennon for a one-half interest in the business, ascertained the amount of the net profits and determined that the share of such net profits due from Grennon to Stein-

metz was $3,952.90. The $2,000 paid on August 29, 1919, was to apply as a part payment of the $3,952.90, thus leaving a balance of $1,952.90 due from Grennon to Steinmetz. According to Steinmetz's version Grennon represented that it was necessary to carry Bratton and Whiteman for a time and for that reason he could not pay the balance due to Steinmetz, but later on Grennon absolutely refused to pay any more money to Steinmetz.

Stated briefly the story related by the defendant and his witnesses is as follows: The parties agreed that if Steinmetz paid Grennon one half of the amount of the inventory, Steinmetz would, when the full amount was paid, become a partner, but that he would not be a partner until the full amount was paid. The sum of $1,867.30 was paid as a part payment, leaving a balance of $5,210.51 which Steinmetz was obligated to pay before he could become a partner or be entitled to any of the rights of a partner. Steinmetz worked in the People's Market and received $25 a week from Grennon in payment for his work. Finally Steinmetz informed Grennon that he was unable to pay the balance necessary to be paid to become a partner and that if Grennon would return the $1,867.30 he would cancel the agreement relating to the shop. Grennon agreed that he would repay the amount and subsequently on August 29, 1919, paid $2,000 to Steinmetz ''being $137.50 more than the plaintiff had paid into said business.'' Grennon says that he alone conducted the negotiations with Bratton and Whiteman and that when he sold the People's Market to them he was selling his own individual property.

It is simply impossible to reconcile the conflicting stories related by the litigants. The parties agree that there was a contract, but they disagree most

radically as to the terms of that contract. Steinmetz says that the agreement consummated a partnership. Grennon claims that the agreement did nothing more than to fix the terms whereby Steinmetz could become a partner in the future if he performed those terms; and that, since the terms were not complied with, Steinmetz never became a partner. Steinmetz asserts that the parties settled their accounts and produced a stated account. Grennon insists that an account was not stated. It is admitted that Grennon paid Steinmetz $2,000; but Grennon claims that this payment was a return of the moneys previously paid to him by Steinmetz, while Steinmetz insists that it was in part payment of the account stated.

The assignments of error arise out of the refusal of the court to require the jury to return a special verdict embracing certain interrogatories, the refusal to grant a motion for a judgment of nonsuit, the contention that the complaint is insufficient because it does not allege a promise by Grennon to pay the amount of the alleged account stated, the refusal to give requested instructions relating to the proof of the alleged partnership, and rulings upon the admissibility of evidence.

1. The record is utterly devoid of any evidence of abuse of judicial discretion in the refusal of the court to require the jury to make special findings; and therefore this assignment must be dismissed from further consideration: *Fox* v. *Tift,* 57 Or. 268, 275 (111 Pac. 51, Ann. Cas. 1912D, 845).

2. The motion for an involuntary judgment of nonsuit was properly disallowed. The record contains ample evidence, if believed by a jury, to sustain a verdict and judgment for the plaintiff.

3. An account stated is an agreement between persons who have had previous transactions of a monetary character fixing the amount due in respect to such transactions and promising payment: *Truman v. Owens,* 17 Or. 523 (21 Pac. 665); *Holmes* v. *Page,* 19 Or. 232 (23 Pac. 961); *Crawford* v. *Hutchinson,* 38 Or. 578 (65 Pac. 84).

4. Since an account stated is an agreement, it, like any other agreement, cannot be said to exist unless the minds of the parties have met. The parties must agree that the balance struck is correct. The agreement may result from acquiescence implied from the failure to object to an account rendered by one party to the other; or an account stated may result where the parties meet and go over other accounts and strike a balance in favor of one of them and the other assents to the balance as correct. The form of the assent is generally immaterial, for it may be express or it may be implied from the conduct of the parties and the circumstances of the case. If, in the instant case, there was an account stated, it was one where the parties met and after going over their accounts agreed upon the balance due from one to the other.

5. An account stated involves as a necessary element a promise to pay the balance ascertained to be due. This promise may be express; but if it is not actually expressed the law will imply a promise to pay when the parties agree upon the amount due or when their conduct justifies the inference that they have agreed.

6. When the parties agree that a specified amount is due the law implies a promise to pay that amount. It is argued, however, that when the parties are partners an account stated cannot be effected unless the debtor partner expressly promises to pay. It must be remembered that the instant case is not one where one

partner is predicating an account stated upon the mere rendering of a statement, but it is one where the parties have met and struck a balance; nor is it one where a balance was struck during the progress of the partnership business and before the termination of any of its activities, but it is one where an entire business had been sold and the partnership dissolved and nothing was to be done except to pay the firm debts. Indeed, when the account was stated, assuming that it was stated, all the firm debts had been paid and nothing more was to be done except to ascertain and divide between Steinmetz and Grennon whatever remained. Although different rules may apply to balances struck by partners at a time when their business is in full progress, we do not now inquire concerning those rules because it is not necessary to do so. It has sometimes been held that a balance struck by partners even in circumstances like the situation presented here does not effect an account stated unless the debtor partner expressly promises to pay: *Gulick* v. *Gulick,* 14 N. J. L. 578, 581; and see 1 R. C. L. 212; but it has also been held in like situations that an account stated is produced, and it seems to us that this is the better view and is supported by more logical reasoning: *Pote* v. *Philips,* 5 Cranch C. C. 154 (Fed. Cas. No. 11,316); 1 C. J. 697. If Steinmetz and Grennon struck a balance in August, 1919, and it constituted a final adjustment of the whole of the partnership affairs, the alleged account stated was the culmination and very end of the partnership. There was at that time a total absence of all of the reasons which require a different rule where partners strike a balance at a time when the firm is in full progress and before it abates or discontinues its business. We therefore hold that an express promise by Grennon to pay was not indispensable,

but in the circumstances disclosed by the record the law implies a promise. The fact that the account stated constituted an adjustment of partnership affairs did not in the attending circumstances require the allegation of a promise by Grennon to pay; and, therefore, the complaint is sufficient unless such an allegation is always necessary.

7. The rule of the common law required an allegation that the defendant promised to pay, but under the modern rule, or at any rate under the more logical rule, a complaint is sufficient if it alleges enough facts to support a promise implied by law, for legal conclusions need not be alleged: 1 C. J. 723; 1 R. C. L. 212; *Mine & Smelter Supply Co.* v. *Parke & Lacy Co.,* 107 Fed. 881 (47 C. C. A. 34); *Voight* v. *Brooks,* 19 Mont. 374 (48 Pac. 549); *Heinrich* v. *Englund,* 34 Minn. 395 (26 N. W. 122); *Bouslog* v. *Garrett,* 39 Ind. 338; *Moss* v. *Lindblom,* 57 N. Y. Supp. 703 (39 App. Div. 586).

The defendant requested several instructions which, if given, would have advised the jury that the plaintiff could not recover if the agreement between the parties was as claimed by the defendant, and that the plaintiff was required to prove by a preponderance of the evidence that he and the defendant actually became partners. The court refused to give any of these requested instructions; nor was the substance of any of them given. Aside from the formal instructions given in all cases, the charge embraced practically nothing more than an explanation of the essential elements of an account stated and a statement that if the plaintiff proved by a preponderance of the evidence that an account was stated he was entitled to recover, without also telling the jury that if there was no partnership or if the agreement concerning the People's Market was as claimed by defendant

the plaintiff could not recover. It must be remembered that the plaintiff pleaded the alleged partnership as a basis for the account stated, and that the defendant not only denied the account stated but he also denied its alleged basis and affirmatively declared that the parties made an agreement which went no further than to make it possible for the plaintiff to become a partner.

8. It is true that, since an action upon an account stated is upon a new promise and not upon the original debt or items of account, it is not ordinarily necessary to give evidence of the original character of the debt or of the items constituting the account, for it is sufficient if the plaintiff proves the account stated: 1 C. J. 729; 1 R. C. L. 220. The promise resulting from the accounting is the gist of the cause of action upon an account stated, and for that reason the subject matter of the original debt ordinarily need not be alleged: 1 C. J. 724.

9. However, an account stated must be based upon previous transactions of a monetary character. In 1 C. J. 699 the rule is aptly stated as follows:

"An account stated cannot be made the instrument to create an original liability; but merely determines the amount of the debt where liability previously existed; and this notwithstanding the proposition, as often laid down, that an admission of a certain sum being due in respect to a demand for which an action would lie is sufficient to show an account stated."

10. We must constantly keep in mind the fact that the defendant denied the alleged account stated, and since it was incumbent upon the plaintiff to prove the account stated by a preponderance of the evidence, the plaintiff was entitled to show the particular transactions between the parties as a basis for the statement of account: 1 C. J. 728. Transactions

prior to settlement may be referred to by the plaintiff as a foundation for the settlement in order to explain it: *Barr* v. *Lake,* 147 Mo. App. 252 (126 S. W. 755).

11. The plaintiff alleged the existence of a partnership as the basis of an account stated. This allegation served no other purpose. A large portion, if not most, of the evidence introduced by the plaintiff in his case in chief was offered for the purpose of proving the existence of a. partnership. A very large portion, if not most, of the evidence offered by the defendant was offered for the purpose both of disproving partnership and also of supporting the agreement pleaded by the defendant. Having averred a partnership as the basis of the alleged account stated the plaintiff could not have proved some other basis; as, for example, a joint adventure or the relationship of principal and agent: 1 C. J. 726; *Hughes* v. *Smither,* 23 App. Div. 590 (49 N. Y. Supp. 115); affirmed in 163 N. Y. Supp. 553 (57 N. E. 1112).

12. Under the issues made by the pleadings there could not have been an account stated unless there had been a partnership. The account stated was without a basis unless there was a partnership. In view of the pleadings and of the fact that the efforts of one party were largely devoted to an attempt to prove a partnership while those of the other party were largely devoted to an attempt to disprove a partnership and to prove a different agreement, an instruction advising the jury that the plaintiff could not recover if there was no partnership was peculiarly appropriate.

13. When the defendant denies an account stated he may show any facts which go to disprove plaintiff's cause of action, including evidence tending to

show the inherent improbability of the defendant having agreed to the alleged account: 1 C. J. 726; *The Mayer Coal Co.* v. *Stallsmith,* 89 Kan. 81 (129 Pac. 831); *Ensign* v. *Hooker,* 6 App. Div. 425 (39 N. Y. Supp. 543); *Field* v. *Knapp,* 108 N. Y. 87 (14 N. E. 829).

14. The defendant complains of the refusal to permit the introduction of the written bill of sale and agreement signed by Grennon and by Bratton and Whiteman evidencing the transfer of the business. This writing is dated October 4, 1919, and was therefore signed subsequent to the date of the account stated. The record is devoid of any explanation, and the only facts of which we are advised are that the business was sold on July 20, 1919, and that a writing dated October 4, 1919, was sought to be offered in evidence. In these circumstances the writing was not admissible.

15. However, it was competent for the defendant to show if he could that he sold the business as his own individual property, and that Steinmetz did not participate in the negotiations for the sale; because such a showing relates to the question as to whether the parties were partners.

16. In his case in chief Steinmtez testified that Bratton told him "we are about to buy" but Bratton then asked: "Is it all right?" And he, Steinmetz, said: "All right"; and although the plaintiff gave this testimony and based his claim of an account stated upon an allegation of partnership, the court refused to permit Bratton to testify that Steinmetz did not assert that he was a partner or state that he had any interest in the business, and also refused to permit him to testify that he had carried on the negotiations with Grennon alone, and further refused to

permit him to testify that he had no information or knowledge that Steinmetz was a partner of Grennon.

The plaintiff was not present when the deal was closed with Bratton and Whiteman. The plaintiff explained his absence by relating a conversation claimed to have been had with Grennon. The defendant denied that the conversation occurred. Grennon was not permitted to testify whether or not at the time of the sale to Bratton and Whiteman the plaintiff came to him and demanded that he recognize the plaintiff as a partner. The position taken by the defendant was that the plaintiff was not a partner. If Steinmetz took no part in the negotiations and made no claim of partnership to Bratton or to Grennon it was competent for the defendant to show such facts. It is of course ultimately for the jury to decide whether a partnership existed; but to aid the jury in the determination of that question it was competent for the plaintiff to offer evidence tending to show the existence of a partnership, and it was likewise competent for the defendant to offer evidence tending to disprove the existence of a partnership.

The judgment is reversed.

REVERSED.    OBJECTIONS TO COST BILL SUSTAINED.

McBRIDE, C. J., and BURNETT and RAND, JJ., concur.