Carroll,
Dec. 2, 1947. } No. 3664.

KATHERINE BRYER WHITE *v*. BERTHA L. SCHRAFFT.

*Robert W. Upton* (by brief and orally), for the plaintiff.

*Nighswander & Lord* and *I. J. Silverman*, of Massachusetts (*Mr. Nighswander* orally), for the defendant.

KENISON, J. The main question is whether the evidence establishes an open account or an account stated between the parties. The course of business between the parties thus becomes material. From July to September of 1931 the plaintiff charged and the defendant paid in full for antiques and merchandise $8,890.90. The Court properly declined to reopen this account and it is not now involved in this litigation. The next bill for about $35,000 covering the period of one year from September, 1931, was paid in full except for a balance of $120 which was waived by the plaintiff and therefore may be considered as closed. "To establish an account stated there must be an assent, express or implied, to the correctness of the balance struck.

It is not essential that the account shall be stated in any particular form, and the mere statement of a balance due, if accepted as correct, may constitute an account stated." *Connolly* v. *Bank*, 92 N. H. 89, 91, 92. Up to this point the account was stated and settled by payment and in the absence of fraud or mistake cannot be reopened. *Rich* v. *Eldredge*, 42 N. H. 153.

The third account for merchandise sold from September, 1932, to April, 1935, involved charges of $66,000 and payments in lump sums of $5,000 and less totaling $33,000 during this period. This bill was examined by the defendant's secretary in the presence of the parties and the charges were not questioned until after suit was brought. Not only did the defendants make substantial payments in lump sums on account totaling over $20,000 during the remainder of 1935 but the court has found that in 1936 the plaintiff requested further payments and the defendant made payments on account. Here again all the elements of an account stated were present. *Bean* v. *Quirin*, 87 N. H. 343, 347. These payments by the debtor defendant were properly applied by the creditor plaintiff to the balance of this account in the absence of any contrary instructions from the debtor that they were to be applied on future accounts. *Parks* v. *Ingram*, 22 N. H. 283. Independently of the "legal right" of the plaintiff to make such an application of payments on this account (*Arfanis* v. *Bank*, 87 N. H. 380, 383), it appears to have been so intended by the defendant. Whenever the defendant desired payment on account to be paid to some third party for labor or supplies, she clearly indicated this fact to the plaintiff. Since the payments ultimately made and credited to this account were more than sufficient to satisfy the balance, the stated account became a settled account.

It is true that the accounts stated were incomplete to the extent they did not include plaintiff's charges for expense and services. Defendant contends that there cannot be a partial account stated. This represents a minority rule which we do not follow. There appears to be no good reason why the creditor and the debtor should be precluded by law from striking a partial balance of the amount due by agreement and reserving the remainder of the account for future agreement, compromise or even litigation. If the parties desire and intend to take a large bite out of the litigation apple, they should be allowed to do it. In the case at bar it is not seriously disputed that the plaintiff was to receive a reasonable amount for her services, expenses and commissions, the court has so found, and made allowances therefor in findings which are supported by the evidence.

However indefinite the agreement may have been as to the terms of payment, it was clear that the parties assumed reasonable compensation for services rendered. Therefore there is no reason why the plaintiff and the defendant could not agree to the account rendered for antiques and merchandise sold even though it did not include all services and expenses in connection therewith.

The fourth account of $30,000 for merchandise sold from April 1935 to the year 1937 stands somewhat differently than the previous ones. The bill was never submitted to the defendant until after the commencement of this action in 1942. As to this account the defendant properly argues that there was no agreement to strike any balance and there was no account stated. The defendant is not precluded by the plaintiff's charges in this account. The test is the market value of the merchandise sold at the time of sale even though there may be "no set price for antiques and the variation is great." The difficulty of ascertaining the market value of antiques does not change the test. *Trustees &c. Academy* v. *Exeter*, 92 N. H. 473. In determining the ultimate issue of the market value of the antiques and merchandise sold the court could and apparently did consider certain collateral issues as relevant cost, period of depression, condition of the antique market as a whole, condition of the article sold "and the fact that many of the antiques . . . were not extraordinary bargains picked up from unsuspecting country people."

Wide variation in expert testimony in many fields is at best a difficult problem in the fact-finding process and not the brightest spot in the administration of justice. The problem appears to be more acute and the condition more aggravated and less commendable in the field of antique values. The court found the experts "at hopeless variance in their estimates" and "there is much to cast doubt on the value of their testimony as a whole." Needless to say this case is not the medium to discuss the problem nor the forum in which a possible cure or remedy may be effected. Suffice it is to say only that the judgment of the Presiding Justice will be sustained in such case if there is any evidence to support him. The general limitations of the cold printed record in this court as against the more reliable method of the Trial Court seeing and hearing the witnesses and evaluating the weight of the experts' testimony call for rigid adherence to this principle of appellate review.

It was a dispute over the Norton-Griffiths account of $27,000 in 1937 which gave rise to this case. The findings of the Court that the defendant agreed to be responsible for this account "and agreed in

substance to pay whatever was owed on this bill" were justifiable in spite of conflicting and at times confusing evidence to the contrary from both plaintiff and defendant. Plaintiff's contention that the defendant agreed to the balance of $4,900 on this account is rejected. At that time the defendant agreed only that the claim for this balance due was unaffected by the release executed between the Norton-Griffiths and the defendant. No balance was struck between the plaintiff and the defendant and the account remained open as to the claimed balance.

The Court gave some examples of overcharges by the plaintiff but the amount thereof is expressed in a single total figure which is not separated by dates, items or the various accounts in plaintiff's specifications. In absence of fraud, misrepresentation or mistake the alleged overcharges are immaterial to the extent they are included in the first three accounts from July 1931 to April 1935 because the changes have been agreed to by the parties and paid. The overcharges which involve accounts subsequent to April 1935 are obviously material (schedules B, E and whatever balance may be due on schedules G and G-1). It is also difficult to determine whether the overcharges are in excess of market value which is not allowable or merely in excess of a profit on cost to the plaintiff which the Court thought too high. If the latter case there is no overcharge if the profit plus cost to the plaintiff does not exceed market value. While the profit to the plaintiff is a relevant factor in determining market value of the article sold, it is not the test of market value. An antique that can be sold by the plaintiff on the market at a given price is worth that price to the defendant although this may result in a large profit to the plaintiff.

A new trial is necessary and the extent to which the issues on retrial may be limited will be determined by the Trial Court. *West* v. *Railroad*, 81 N. H. 522. The scope of the new trial is one of fact for the Trial Court who must decide how much of the case must be retried in order to afford the parties a fair trial. *Hall* v. *Insurance Co.*, 91 N. H. 6. Subject to this qualification it may be of some aid to the Trial Court and the parties to indicate certain issues that may be eliminated from the retrial if thereby the Trial Court is satisfied a fair trial will result. *Lemire* v. *Haley*, 91 N. H. 357.

The findings and rulings of the Court with respect to the first bill (plaintiff's exhibit 1), the school account (schedule D), charges for services, expenses and commissions (schedules C, F and H) do not appear to be affected by any error in the trial. The same is true of

certain findings of the Court that the antiques were original and genuine, correction of the amounts in the specifications including an extra credit of $1,180.70 due the defendant, and disallowance of additional credits and payments claimed by the defendant (findings XVIII and XIX). The first three accounts (plaintiff's exhibit 1 and 2 and schedule A) are closed except to the extent the defendant can show misrepresentation as to the market value of any article therein which led to defendant's acceptance of the accounts as rendered. Merchandise sold and expenses subsequent to April 1935 (schedules B, E and any balance due on schedules G and G-1) are open for retrial although counsel by agreement may in a pre-trial hearing further limit the scope of the new trial.

Interest is not disallowed merely because the damages are unliquidated either in contract (*Dame* v. *Wood*, 75 N. H. 38) or in tort for the loss or damage to property. *Emery* v. *Company*, 89 N. H. 165. However there are special circumstances in this case that warrant the defendant's contention and the Court's ruling that interest should be disallowed. Plaintiff's long delay in preparing and presenting her bills, the fact that the defendant never received many of the bills until after the suit was commenced in 1942 and the defendant never had a complete statement of the amounts claimed until specifications were filed subsequent to this action—are some of the reasons why interest begins to run only from the filing of the specifications in 1942. "In the absence of legislation the courts dealt with the question of allowing interest according to their conception of the demands of justice and practicality." *Funkhouser* v. *Preston Co.*, 290 U. S. 163, 168, 169; see, *Lemire* v. *Haley*, 93 N. H. 206. Cases in other jurisdictions which have mandatory statutes governing unliquidated damages are not considered persuasive here. N. Y. Civil Practice Act, s. 480.

The able arguments of counsel and their industry in the preparation and trial of the case have made a difficult case easier although not simple. While the remaining exceptions of both parties are overruled each one has been examined. During oral argument it appeared that there was a mathematical error in computation of $1,000 in one of the sub-totals in plaintiff's specifications. If the parties cannot agree on this item, the Presiding Justice may determine it finally on retrial.

*New trial as limited.*

BLANDIN and DUNCAN, JJ., did not sit: the others concurred.