EIMCO–BSP SERVICE COMPANY,
Plaintiff-Appellee,

v.

VALLEY INLAND PACIFIC
CONSTRUCTORS, INC.,
Defendant-Appellant.

No. 77–3763.

United States Court of Appeals,
Ninth Circuit.

Submitted March 4, 1980.

Decided Aug. 4, 1980.

Rehearing Denied Sept. 17, 1980.

Elizabeth Yeats, Portland, Or., for defendant-appellant.

Clifford N. Carlsen, Jr., Portland, Or., for plaintiff-appellee.

Before TANG, SCHROEDER and NELSON, Circuit Judges.

TANG, Circuit Judge:

This is a diversity action involving a dispute between a contractor, Valley Inland Pacific Constructors, Inc. (VIPCO), and a subcontractor, Eimco-BSP Service Company (Envirotech), over the amount due Envirotech for work it performed in connection with renovation of a sewage treatment plant for the City of Vancouver, Washington. Envirotech claimed that the failure of VIPCO to object to the final account that Envirotech rendered to it constituted an account stated and thereby extinguished VIPCO's unliquidated damage claim for breach of contract. The magistrate, sitting with consent of the parties entered judgment for Envirotech, and VIPCO appeals.

VIPCO was awarded the prime contract to convert Vancouver's Westside Sewage Treatment Plant into a secondary treatment facility. Envirotech and VIPCO entered into a contract whereby Envirotech agreed to furnish and install the plant's heat treatment system. The contract provided that the final payment of the 10% retained would be made to Envirotech 45 days after the work was approved by the architect and the City.

In May 1973 Envirotech learned that the heat exchanger it had installed was unacceptable to the Washington State authorities, because it did not contain an American Society of Mechanical Engineers Code. Before the city or VIPCO had learned of this problem, the city had released $120,000 to VIPCO as partial payment for the heat exchanger, a sum that VIPCO in turn had paid to Envirotech. Upon learning that the heat exchanger would be unacceptable, the city recouped its payment by withholding future payments to VIPCO. Envirotech, however, refused to return any of the payment to VIPCO.

Instead of removing the uncoded heat exchanger and installing a coded one, Envirotech appealed the decision that it needed a coded exchanger through state administrative channels. VIPCO was obligated, under its contract with the city, to dispose of sludge during the construction, and, on November 6, 1973 informed Envirotech that it held Envirotech responsible for the disposal of the sludge that would accumulate, because the process portion of the plant was complete with the exception of the heat treatment system. Envirotech denied responsibility for the accumulating sludge. VIPCO met privately with city officials in December 1973 and agreed on a disposal plan for alleviating the problem. As a result, VIPCO incurred severe disposal expenses as the sludge accumulated during the delay in the operation of the heat treatment system.

In January 1974, after receiving permission from the state of Washington, Envirotech began around the clock heat exchange operations using the uncoded system on a temporary basis until they installed a new coded heat exchange system. In March 1974 Envirotech installed the new heat exchanger and the city once again paid VIPCO for that portion of the project.

The Envirotech-VIPCO contract provided that Envirotech would be paid the final retainage sum within 45 days of the city's acceptance of the project. The city accepted the project in December 1974, although it did not release the final retention money until May 1975. The final retainage due Envirotech was $61,900.

In August and December 1974, Envirotech mailed VIPCO invoices for the unpaid remainder due on the contract. VIPCO did not respond to either mailing. During late 1974 and the first five months of 1975, James Young, Envirotech's Project Manager, called Frank Fritzie, the President of VIPCO, to determine when the retainage would be released to Envirotech. According to Young, the conversations generally related to when the project retainage would be released by the city to VIPCO. On March 18, 1975, following a conversation during which Fritzie told Young that the final retention would be released to VIPCO's subcontractors within one week after receipt from the city, Young sent the following letter:

"Dear Mr. Fritzie:

I was happy to learn this afternoon in talking with you that the final Tax Audit by the State of Washington will begin on Thursday, March 20.

In talking with the City (Mr. Eric Oien) and yourself, it is my understanding that the City will release the retention monies to V.I.P. as soon as the State Tax Audit is complete.

Further, per our discussions, V.I.P. will release all billed retention monies ($61,-900) to Envirotech within one week after receipt of funds from the City.

Please advise if any of the above is not in accordance with our conversation.

Very truly yours,
EIMCO BSP Division
ENVIROTECH CORPORATION
/s/ James Young
Project Manager"

VIPCO made no immediate response to this letter. During the next two months, another Envirotech representative, William Reilly, called Fritzie to seek release of the funds. Fritzie did not recall any discussions about VIPCO claiming back charges resulting from the sludge removal.

In early June 1975, during a telephone conversation between Young and Fritzie, Envirotech learned for the first time that VIPCO intended to offset the costs of sludge removal from the final retainage due Envirotech. Accordingly, VIPCO tendered a check later that month to Envirotech for $1,191.70. Envirotech rejected this tender and another check for even less than this amount, and filed this complaint to recover the retainage. VIPCO counterclaimed for damages incurred from Envirotech's breach of its contract to provide an acceptable heat exchanger system.

Envirotech pleaded two causes of action, one based on the original contract, the other on an account stated. The magistrate found that the failure of VIPCO to object to the account tendered in the March 18 letter within a reasonable time constituted an account stated in the amount of $61,900. He disallowed an offset to VIPCO, finding it "fundamentally inconsistent with the nature of the account stated."

The sole issue on appeal is the correctness of the magistrate's conclusion that there was an account stated between the parties which constituted a final adjustment of their dealings. We conclude that the magistrate erred in his understanding of the law of "account stated" and remand for further proceedings.

 An account stated is an agreement between persons having previous monetary transactions that fixes the amount due in respect to such transactions and promises payment. *E. g.*, *Steinmetz v. Grennon*, 106 Or. 625, 634, 212 P. 532, 535 (1923); *Halvor-*

son v. *Blue Mountain Prune Growers*, 188 Or. 661, 214 P.2d 986 (1950). As such, an account stated is itself an independent contract that is enforceable without regard to the underlying transactions on which it is based. *Meridianal Co. v. Moeck*, 121 Or. 133, 253 P. 525 (1927). After a party has tendered an account, the promise to pay the stated amount may be expressed, or implied from the actions of the party when their conduct justifies the inference that they have agreed. *Steinmetz*, 106 Or. at 634, 212 P. 532. Unless a debtor objects within a reasonable time to a tendered account, the inference of an agreement may be drawn and the account considered as stated. *Carlon v. First National Bank*, 80 Or. 539, 547–48, 157 P. 809 (1916).

The theory of account stated has its usual application where persons who carry on business with each other have a series of transactions constituting an open running account with various items of debit and credit. *See Horsley Plumbing & Heating Service, Inc. v. Herzman*, 277 Or. 741, 744, 562 P.2d 170 (1977). Parties with frequent transactions, such as merchant traders, banks and their depositors, retail stores and customers, and business partners, will often reach a final mutual accounting and agreement on a balance due through an account stated. *See* 6 A. Corbin, Contracts § 1303 (1950) at 235.

Thus, the device of account stated is clearly most suitable where the parties have had a series of debits and credits in fixed amounts, and wish to settle their account. It is not surprising, therefore, that, under Oregon law, an unliquidated claim could never serve as the basis for an account. *See Vanbebber v. Plunkett*, 26 Or. 562, 568, 38 P. 707 (1895); *Johnson v. Stillwell*, 90 Or. 211, 216, 176 P. 123 (1918). The policy behind such a rule was to prevent one party from using an account stated to convert an action for unliquidated damages into an action upon a money demand, thereby preventing inquiry into the original cause of action and requiring persons against whom such a claim is made to be on the constant alert "to prevent an undue advantage being taken of him." *Vanbebber*, 26 Or. at 569, 38 P. at 709.

The Oregon courts have not recently addressed whether an unliquidated claim may form the basis for an account stated, and, under the modern view, there is no absolute rule against settling an unliquidated claim through an account stated. *See California Milling Corp. v. White*, 229 Cal. App.2d 469, 478, 40 Cal.Rptr. 301 (1964); 6 Corbin, Contracts § 1305 (1950). Nevertheless, the modern view requires that the parties expressly agree to reduce the unliquidated claim to a definite amount. *See California Milling Corp.*, 229 Cal.App.2d at 478, 40 Cal.Rptr. 301. Parties to an account stated are not bound as to matters that were not contemplated by them, or that were not included in the settlement, even though those matters existed when the account was stated. *Id.* at 478–79, 40 Cal. Rptr. 301; *Nello L. Teer Co. v. Dickerson, Inc.*, 257 N.C. 522, 126 S.E.2d 500, 507 (1962). If the agreement reached does not contemplate a final adjustment of all possible claims, an account may be partially stated for the debts and credits over which the parties had a meeting of the minds. *See Nello L. Teer Co.*, 126 S.E.2d at 507; *White v. Schraft*, 94 N.H. 467, 56 A.2d 62, 65 (1948).

With these principles in mind, we find that the magistrate erred as a matter of law in finding an account stated which absolved Envirotech for any potential liability for its alleged breach of contract. This conclusion is plain under traditional Oregon law which provides that an unliquidated claim cannot serve as the basis for an account stated. In *Johnson v. Stillwell*, 90 Or. 211, 176 P. 123 (1918), for example, the plaintiff sued the defendant for a breach of contract, alleging two causes of action. In the first cause of action, the plaintiff claimed that the defendant owed him $254.88 under a contract by which the parties had agreed to winter their livestock together. In the second, the plaintiff claimed that the defendant had breached the agreement, resulting in the loss of cattle valued at $1140. The defendant answered both counts by pleading an account stated. The Oregon Supreme Court reversed the jury's finding for the defendant. It

found that the trial court erred in giving a jury instruction that required that the jury find for the defendant on the breach of contract claim if it found an account was stated, because "a promise to pay a certain sum in settlement of a claim for unliquidated damages cannot be the basis of an account stated." *Id.* at 216, 176 P. at 124.

■ Envirotech tries to distinguish this case by arguing that Johnson involved an account stated as a defense to a breach of contract, whereas VIPCO is alleging a breach of contract as a defense to an account stated. This procedural variation is immaterial. Had VIPCO sued Envirotech for breach of contract before Envirotech filed this action, thus requiring Envirotech to assert an account stated as a defense, this case would be no different than *Johnson.*[1]

Even under the modern view of account stated, the magistrate's application of the law was erroneous. In *California Milling Corp. v. White*, 229 Cal.App.2d 469, 40 Cal. Rptr. 301 (1964), the plaintiff sued to recover on a guaranty executed by White. White counterclaimed for damages, alleging that the plaintiff had breached a separate contract in which it had promised to deliver turkeys to White. The plaintiff defended the counterclaim on the ground that, after the plaintiff had rendered an accurate statement of account to White, White had paid the account in full. The California Court of Appeals upheld the trial court's finding that the account which had been stated did not include the unliquidated contract claim. No agreement had been reached concerning the alleged breach of contract, and an account stated could not bar a recovery for matters not within the contemplation of the party when the settlement was made.

The present case cannot be meaningfully distinguished from *White*. Although VIP-CO may have mentioned the possibility that it would seek to hold Envirotech responsible for its delay in providing the heat exchanger, there was certainly no negotiation or haggling over the extent of that liability before the March 18 letter. Thus, it could not have been in the contemplation of both parties that the March 18 letter was to be an adjustment of the unliquidated breach of contract claim. Indeed, it is Envirotech which argues that it had no knowledge that VIPCO would press its breach of contract claim until two months after VIPCO received the March 18 letter. Since, by Envirotech's own admission, a proposed settlement of the breach of contract claim was not included in the account it tendered to VIPCO on March 18, VIPCO's silence cannot possibly be construed as an assent to foregoing its breach of contract claim. At best, VIPCO's failure to respond to Envirotech's March 18 letter means that the parties agreed that $61,900 was the amount of retainage due to Envirotech. Contrary to the magistrate's view, such a partial account stated is not inconsistent with the general theory of account stated. *See Nello L. Teer Co.*, 126 S.E.2d at 507.

Although Envirotech argues that the magistrate's judgment was implicitly a finding that VIPCO had not proved any damages from its breach of contract claim, it is apparent from a reading of the magistrate's opinion that the magistrate had relied on a theory of account stated. Upon remand, therefore, the magistrate shall undertake such proceedings as are necessary to make and enter findings regarding VIPCO's counterclaim.

Reversed and remanded.

SCHROEDER, Circuit Judge, dissenting:

I must respectfully dissent. In my view the fundamental question in this appeal is

---

1. Envirotech also attempts to distinguish *Vanbebber v. Plunkett*, 26 Or. 562, 38 P. 707 (1895), on the ground that, in *Vanbebber*, it was the creditor who asserted an account based on an unliquidated claim, and in this case it was the debtor who included the unliquidated claim in its tender of the account. The policy ground asserted in *Vanbebber*—preventing one party from taking undue advantage of the other—is equally applicable in this case. Here the debtor has attempted to include the unliquidated claim in its statement of account without notifying the creditor in the statement of account either that the unliquidated claim was included or that the debtor had assigned it a value of zero.

whether the parties ever agreed that the plaintiff would be paid the full retention amount without back charges.

The magistrate conducted a several day trial tracing the entire history of the sludge problem. He found that the problem which developed in November, 1973, regarding sludge disposal, was permanently resolved in early February with replacement of the heat exchanger. After that resolution, the plaintiff sent the defendant repeated billings for the full retention, and no objection was ever voiced until June, 1975, when the defendant sent the plaintiff a check for an amount some $60,000 less than the full retention. The magistrate further found that the letter of March 18 was not simply a bill or a settlement offer but was a memorandum of an agreement made between the president of defendant and the plaintiff's project manager regarding payment of the full $61,900 retention.

I believe the magistrate's findings and conclusions to be fully supported by the record and would uphold them. I cannot agree with the majority that the record somehow compels us to overturn the factual findings of the magistrate and hold that the defendant is now entitled to challenge the plaintiff's claim.

Nor do I think that affirmance requires any impermissible stretching of Oregon law. Recent Oregon cases discussing accounts stated focus on whether or not the parties have in fact agreed on the amount owed. *TriCounty Insurance Inc. v. Marsh,* 45 Or.App. 219, 608 P.2d 190 (Or.App.1980); *Cooley v. Roman,* 286 Or. 807, 596 P.2d 565 (1979). As Corbin points out, Oregon has apparently accepted the modern and better view that accounts stated can encompass unliquidated claims. 6 Corbin on Contracts § 1312 at 257 & 258 n.44 (1962) (*citing State ex rel. Kaser v. Leonard,* 164 Or. 587, 102 P.2d 197 (1940)).